## OLAND *et al.* v. MALSON *et al.*

No. 2925.    Opinion Filed October 14, 1913.

(135 Pac. 1053.)

1.    **TRIAL—General Finding—Effect.** A general finding in favor of a party includes a finding of all those facts necessary to constitute the claim of the party in whose favor the finding is made.

2.    **ESCROWS — Delivery.—Ratification by Conduct—Sufficiency of Evidence.** The improper delivery of a deed held in escrow may be ratified by the person as to whom the delivery was improper; and such ratification may be shown by the conduct of such party in relation thereto.

3.    **EVIDENCE — Parol Evidence — Breach of Covenant — Separate Agreement.** A claim for damages in relation to a sale of land, predicated on an alleged violation by defendant of parol covenants and warranties made prior to or simultaneously with the execution of the written contract of sale, is not well founded; for the reason that the execution of a contract in writing supersedes all the oral negotiations or stipulations surrounding its matter which preceded or accompanied the execution of the instrument.

(Syllabus by Brewer, C.)

*Error from Superior Court, Custer County;*
*J. W. Lawter, Judge.*

Action by Anna Oland and another against George M. Malson and another. Judgment for defendants, and plaintiffs bring error. Reversed, with directions.

*Andrew J. Welch,* for plaintiffs in error.

*J. C. Shull,* for defendants in error.

Opinion by BREWER, C. This suit involves the title to the S. ½ of the N. E. ¼ of section 10, township 12 N., range 18 W., in Custer county, Okla. On the 17th day of February, 1910, prior negotiations between the parties resulted in the sale of the above lands by Malson and wife to Anna Oland, for the agreed consideration of $2,300. On that date the Malsons executed a general warranty deed to the purchaser, containing the usual covenants and warranties of seisin, clear title, etc. Upon the execution of the deed Mrs. Oland paid the sum of $900 as a cash payment of consideration, and executed a note for $1,400 payable on January 1, 1911. The note, together with the deed mentioned, were, by agreement of the parties, put into an envelope and delivered to the cashier of the First State Bank of Clinton. The instructions to the cashier were indorsed on the back of the envelope as follows:

"G. M. MALSON—ANNA OLAND.

"Within deed to be delivered to Anna Oland on payment of within note for $1,400.00.

"Possession of farm to be given when note is paid and deed delivered."

Malson was to have the use of the place and the rent therefrom for the year 1910. When the note came due January 1, 1911, Mrs. Oland made the claim that Malson had permitted the place to get in bad repair and in a poor state of cultivation, in violation of parol agreements made at the time the deed was executed or prior thereto, and also that he had guaranteed that the place contained two living wells of water at the time the trade was made, and that same was not true; and she thereupon, on January 18, 1911, brought a suit for rescission and a return of the $900 paid. Malson appeared in this suit and contested

and defeated her right to rescind, by having a demurrer sustained to her petition, whereupon on May 9, 1911, she dismissed that suit, and shortly thereafter paid the amount of the note into the bank, with instructions to deliver the same to Malson as soon as he surrendered possession of the place. The cashier delivered the deed under the escrow agreement, and it was placed on record. On May 27th, the bank was instructed to turn the proceeds of the note over to Malson without any restrictions as to getting simultaneous possession of the land. After the money had been thus unreservedly placed to the credit of Malson, this suit in ejectment and for damages was brought by Mrs. Oland and her husband, who are here as plaintiffs in error, and who will hereafter be referred to as plaintiffs. Malson, the defendant in error, who will hereafter be called defendant, answered with a general denial and several other special defenses. In his answer the defendant admits the sale of the land, the execution of the deed, the receipt of the $900, the deposit of the note with the escrow agreement as stated herein, and makes the defense that the plaintiffs received the deed and placed it on record without complying with the escrow agreement, and further avers that they only paid said sum into the bank to the credit of the defendant at the time when plaintiffs had prepared to have issued garnishment proceedings for the purpose of garnishing the funds in the hands of the bank, to be held subject to her claims for damages against the defendant. The defendant admits his possession of the land, but avers that because of the matters set up in his answer plaintiffs' deed is void and of no force and effect. Defendant makes no further mention of the $900 paid him, nor does he offer to return the same. Plaintiff in a reply alleges that the deed was properly delivered to her, but that if the deed was delivered to her improperly, and not in strict compliance with the escrow agreement, yet that the defendant had fully ratified the same. The defendant Layton was only a tenant, and is not concerned further in this proceeding. The case was submitted to a jury upon the evidence and the instructions of the court, and a verdict was returned in favor of the plaintiffs for the land and for a small amount of damages. Upon a motion by

defendant for a judgment *non obstante veredicto,* the court set aside the verdict of the jury, and decreed that, "upon an examination of the evidence," the plaintiff should bring her deed into court, and that same should be annulled, canceled, and set aside as void. From this judgment, and an order denying a motion for new trial, the plaintiffs have appealed to this court.

Considering the many claims of the parties, *pro* and *con,* as shown in the pleadings, and the rather involved character of the issues presented, this case presents difficulties; but it is apparent at a glance that the disposition of this case made by the trial court cannot be allowed to stand. It cannot be right, in either law or morals, for the defendant in this case to get the $900 paid him early in 1910, together with the $1,400 and interest placed to his credit in 1911, and retain same, also have awarded to him the farm with its revenues for those two years. A statement of the proposition defeats it.

The petition in this case set up the deed of defendant as the basis of the title claimed; the answer admits the execution of the deed, but claims it was ineffectual because procured in violation of the escrow agreement. The reply denies this, but says if it should be so held, that the delivery has been ratified, On the question of the validity of the deed and the soundness of the title and the right to possession, the questions of whether the deed was properly delivered and of ratification were all the issues presented. The general verdict of the jury must have included a finding of proper delivery or of ratification. A general finding includes a finding of all those facts necessary to constitute the claim of the party for whom judgment has been rendered. *Brewer & S. v. Black,* 5 Okla. 57, 47 Pac. 1089; *Schultz v. Barrows,* 8 Okla. 297, 56 Pac. 1053.

To our minds the evidence of ratification is clear. This renders it unnecessary to discuss the correctness of the delivery. To start with, defendant had defeated the plaintiffs' attempt and desire to rescind, after the note was due according to its tenor. The original payment of the note to the escrow agent was conditioned that "possession be delivered" before the money was delivered. The escrow contract provided for the giving

of possession simultaneously with the payment of the note; later, and before suit was brought, the money was released, unreservedly to defendant. He was willing to take it, and in fact showed, not only his willingness, but his desire, to accept the belated payment by presenting his check for the purpose of appropriating it. It is true that the deed had been delivered under the conditional payment; but the action of defendant was a ratification because it showed that all defendant at that time wanted was the balance of the money. If he had gotten it, would any one question the validity of the deed, even under the assumption that it was originally obtained improperly? The money was to his credit, and the only reason he did not get it on demand was because of the garnishment order of the court. If plaintiff had a just claim against defendant, we know of no law or reason that would prevent her availing herself of the garnishment process of the court. *Kidd v. Seifert,* 11 Okla. 32, 65 Pac. 931. This fund is shown to have been the only available property of defendant, who had become a nonresident, out of which a judgment could have been made. This garnishment of the money, in the hands of the defendant's agent, the escrow agent being the agent for both parties, lies at the bottom, as the sole moving cause, of this present litigation. Except for it these parties would not be here. If, after the money had been deposited to defendant's credit, some third party, holding a note against the defendant, had garnisheed it, could defendant complain legally? If the defendant had owed plaintiff on a note, or for a horse, would she not have had the right to garnishee this money before it was removed from the state? If so, why could she not garnishee it on the claim that defendant was liable to her in damages? If he was not, or if the plaintiff failed to show it, the money would be released, and plaintiff penalized with costs at least.

The claim for damages put forth by plaintiff, in so far as predicated on the alleged violation by defendant of parol covenants and warranties prior or simultaneous with the execution of the written contract of sale—the deed—were not well founded

nor recoverable. Wilson's Rev. & Ann. St. 1903, sec. 781 (Rev. Laws 1910, sec. 942) provides:

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

The defendant should have delivered possession of the land, and trusted to the court to protect his funds against improper damages.

In buying the land, if the plaintiff wanted a warranty "of two wells of living water," or as to "state of repair or tillage" on the 1st of January, 1911, or that the place had a certain number of "acres of alfalfa" on it, or that said place had "reasonably good fences" on it, she ought to have seen to it that these agreements and warranties' were set out in the writing. She and her husband personally visited and examined the place before purchasing it. The written contract contains no such covenants or warranties.

The evidence in this case has taken a wide range, and most of it—that relating to alleged violations of parol agreements prior and at the time the deed was made—is incompetent; but in justice to the court we add that it was not seriously objected to at the trial. From it all the jury concluded that plaintiff was entitled to the land, and to $25 damages to the land, and to $100 for rents and profits. Under the issues, no damages to the land were recoverable; they being predicated on alleged breaches of parol covenants not in the written contract. The $100 allowed for rents and profits is not supported by the evidence. It is agreed that Malson was to have the rents for 1910. The suit was tried June 28, 1911. Malson .had a tenant for 1911 on the land making a crop, but the evidence fails to show that Malson had received any sum of money for that year. If it did show it, this item would have been justified in the verdict. As we view the case under the pleadings and the admitted facts, there being no conflict as to how payment was made and the deed obtained, or the conduct of the parties in reference to same, the plaintiff is entitled to the land and the

rents and profits for the year 1911 and since. If the defendant Malson has received any of these rents, or the benefit thereof, a judgment should go against him for the amount so received on that account. If these rents have been held to await final action in this suit, and Malson has not received any part of them, they should be turned over with possession of the land to plaintiffs. This cause should be reversed and further proceedings had, as the situation may require, in accordance with this opinion.

By the Court: It is so ordered.