## PACIFIC MUT. LIFE INS. CO. OF CALIFORNIA v. COLEY.

No. 7786—Opinion Filed Jan. 9, 1917.

(162 Pac. 713.)

1. Compromise and Settlement—Policy of Law.

It is the policy of the law to encourage the settlement and compromise of controversies in order to discourage litigation. See St. L. & S. F. R. Co. v. Chester, 41 Okla. 369, 138 Pac. 150.

2. Same—Burden of Proof.

Where one claiming a demand against another which is denied accepts a certain sum thereon and executes and delivers his receipt therefor in full settlement, the burden rests upon him to avoid same, where it is pleaded as a defense to a cause of action subsequently instituted by him upon such demand, and in order to overcome the same the evidence must be clear and convincing that the receipt was procured by fraud or misrepresentation, or that the same was not the free and voluntary act of the one signing the same on account of his mental condition.

3. Same—Evidence—Sufficiency.

The evidence in this case examined, and same is held insufficient to authorize the trial court to have presented this question to the jury.

(Syllabus by Hooker, C.)

Error from District Court, Muskogee County; R. P. de Graffenried, Judge.

Action by Samuel B. Coley against the Pacific Mutual Life Insurance Company of California. There was a judgment for plaintiff, and defendant brings error. Reversed and remanded.

Grant Foreman and J. D. Simms, for plaintiff in error.

Irwin Donovan and Crump, Bailey & Crump, for defendant in error.

Opinion by HOOKER, C. This action was commenced in the district court of Muskogee county by the defendant in error against the plaintiff in error, to recover the benefits alleged to be due the plaintiff below by virtue of a policy of accident insurance had by him in the company of the plaintiff in error, and it was claimed by the defendant in error that on January 5, 1913, while engaged in his usual business, he slipped and fell striking his back and hips against the reverse lever quadrant on the engine in which he was employed, and against the edge of the floor, as a result of which an injury was caused to him by external, violent, and accidental means, producing at times visible and external marks upon his body, by virtue of which he was prevented from performing the duties of his occupation, and as a result thereof there was due to him benefits accruing under said policy at the rate of $75 per month for the time of such total disability, not to exceed six months.

The answer of the company herein denied the allegations of the petition, although admitting the execution of the policy, denied that the injury alleged to have been suffered by the defendant in error was covered or embraced in the policy of accident insurance held by the defendant in error with the company so as to make the company liable for said injury, and it further claimed that the defendant in error had submitted his claim to the company, claiming $75 per month for a number of months by reason of said accident, but that it had denied liability, and that it had made a complete settlement with him for any damages or sum due by virtue of said policy, for the reason that it had paid to said defendant in error the sum of $75, and at the time thereof the said defendant in error executed and delivered to it a receipt in words and figures as follows:

"Receipt and Indorsement.

"Received the above balance, being in full satisfaction and final settlement of all claims accruing or to accrue against the Pacific Mutual Life Insurance Company of California on account of any accident already sustained and any disease or illness heretofore contracted.

"S. B. Coley."

It appears from the evidence that the company contended that there was no liability on its part to the defendant in error by virtue of said accident, for the reason that the policy provides that the said Samuel B. Coley was insured "against the results hereinafter set forth, of and caused solely by external, violent, and accidental means (excluding suicide, sane or insane, or any attempt thereat, sane or insane) at once producing visible and external mark upon the body, such means so producing such mark being hereinafter called accident, such accident happening during the term of and while this policy is in full force and effect," and that the injury suffered by the insured did not come within this provision of the policy, for the reason that it did not produce visible and external marks upon the body. The illness benefit of the policy was as follows:

"Illness Benefits.

"Article 5. Illness benefits at the rate of seventy-five dollars per month for such time, not exceeding six months that said insured is necessarily and continuously confined inside the house and regularly visited in the house by a legally qualified physician by reason of disease that is contracted and begins after this policy has been maintained in force continuously for thirty days.

"Or, if the insured by reason of such disease shall be totally disabled and prevented continuously from performing any and all duties pertaining to the insured's occupation, though not confined inside the house, and regularly treated by a legally qualified physician, the company will pay said illness benefits for such time, not exceeding one month, provided the total amount of benefits payable under this article 5 shall not exceed the amount payable for six months of such house confinement."

Proof of claim of the insured was filed by him with the company, and about April 17, 1913, the company declined payment under the accident provision of this policy, and addressed to him the following communication:

"Mr. Samuel B. Coley, Muskogee, Oklahoma. Dear Sir: Acknowledging receipt of yours of the 12th inst., would say that reports at hand from you do not establish that your disability is the result solely of bodily injury caused through external, violent and accidental means which at once produced external mark upon the body. In fact reports establish contrariwise that there was an external mark on your body that immediately disabled you as a result of accidental bodily injury. Therefore your claim if anything would come within the illness clause of your policy, as you hold a general disability contract. You will note that under the illness clause the limit of the company's liability is one month's benefit for nonhouse

confinement and we, without acknowledging liability even in that amount, are disposed to give you the benefit thereof and inclosing check herewith of $75.00 to cover. As to your request for deducting April premium this will serve to advise you that we wish to take advantage of article 18 of the policy. Yours respectfully, Pacific Mutual Life Insurance Company. [Signed] J. W. Rhodes, Supervisor."

The physician's certificate, accompanying the statement of the claim, was to the effect that no objective signs of injury were to be found on the body, but that there was tenderness of the lumbar vertebrae. And in answer to the specific question propounded in the certificate:

"What if any external appearance did the injury show at first examination? Answer. Objective symptoms negative."

The doctor further certifies that he examined Coley on the date of the injury, January 5, 1913, and the examination disclosed as stated above.

One of the defenses of the company here, as stated, upon which it relies, was an accord and satisfaction of any liability to the plaintiff for injuries under said policy, by reason of the facts above stated.

The plaintiff below sought to avoid the settlement made by him upon the ground that, at the time of signing his name to said receipt, he was ill from the effects of the injuries received, and was suffering, by reason of said injury and illness, great bodily pain, and that by reason thereof, when he signed said receipt and indorsement, he did not know, nor was his attention called to the fact, that the statement on the back of the check was anything other than a receipt for the $75 and an indorsement on said check, and that at the time he signed said receipt and indorsement there was due to him more than the sum of $75, and that he never intended to accept the same in full satisfaction of the demand due him by the company, nor would he have ever signed said receipt and indorsement, but from that fact that he was suffering physical pain, and on account thereof was mentally incapable of understanding or comprehending the meaning of such receipt, supposing that he was simply indorsing a check.

The evidence here discloses that this letter, with the check inclosed and the indorsement upon the back thereof, was forwarded to the defendant in error at his home in Muskogee, and received by him in the afternoon; that when he received this letter he read the same, called for his policy, compared the contents of the letter and the claims of the company as stated in the letter with the provisions of his policy, and the next morning in the neighborhood of 9 o'clock boarded the street car, went to the bank, cashed this check, and used the money for purposes of his own, in a businesslike manner. There is no contention here of fraud, misrepresentation, or concealment. Everything was in the open, free, fair, and explained.

The plaintiff could read and write—he could understand the English language when he read it. This receipt upon said check which he signed was plainly written—not difficult to understand, but easily comprehended. He signed the same and accepted the company's money. This court in the case of McDonald v. McKinney, 44 Okla. 62, 143 Pac. 191, said:

"It is prima facie negligence to execute an obligation in writing without first ascertaining its terms by reading or having the same read, which precludes relief therefrom upon the ground of ignorance of such terms and mistake in executing such writing; and, in the absence of evidence of a sufficient excuse to exonerate from negligence in failure to so ascertain the terms of such writing, one executing the same is presumed to have known such terms, and is bound thereby."

And in Colonial Jewelry Co. v. Bridges, 43 Okla. 813, 144 Pac. 577, this court said:

"A person signing an instrument is presumed to know its contents, and one in possession of his faculties and able to read and having an opportunity to read, a contract, which he signs, if he neglects and fails to do so, cannot escape its legal liability, for the reason that at the time false representations were made, to the effect that the writing contained the verbal understanding of the parties."

And in Smith v. Thesmann, 20 Okla. 133, 93 Pac. 977, 15 Ann. Cas. 1161, it is substantially held that one is not relieved from a written contract by reason of having signed while in ignorance of its contents, unless his signature was procured by fraud or false representations.

It cannot be contended here that any misrepresentation was made by the company to the insured. He was not overreached in any way whatever. He had the letter, the check, and the receipt in his possession from the afternoon until the next morning when he cashed it. His mental ability was sufficient to enable him to compare the provisions of his policy with the contentions of the company as set forth in the letter, and his mental condition was such that he could comprehend

the nature of business transactions, for he testified that he owed the bank, and he took this check to the bank, had it cashed, and directed the bank to credit the proceeds thereof upon his indebtedness. This court in St. L. & S. F. R. Co. v. Chester, 41 Okla. 371, 138 Pac. 150, said:

"We have carefully scrutinized every word of the evidence, and it utterly fails to show either fraud or misrepresentation upon the part of the claim agent, or any other just, sufficient, or lawful reason why plaintiff should be allowed to avoid his contract of settlement. This court has evinced no hesitancy in setting aside releases in personal injury cases, when procured by fraud and misrepresentations as to material matters, or for other reasons sufficient in law, as may be observed by a reference to the following cases: St. L. & S. F. R. Co. v. Richards, 23 Okla. 256, 102 Pac. 92, 23 L. R. A. (N. S.) 1032; St. L. & S. F. R. Co. v. Nichols, 39 Okla. 522, 136 Pac. 159; Herndon v. St. L. & S. F. R. Co., 37 Okla. 256, 128 Pac. 727; St. L. & S. F. R. Co. v. Reed, 37 Okla. 350, 132 Pac. 355.

"But this does not mean that a contract, fairly and honestly entered into, can be avoided for slight or frivolous reasons. Indeed, the rule is quite to the contrary. The law and the public policy of all civilized countries, so far as we have observed, favors settlements and compromises, entered into fairly and in good faith between competent persons, as a discouragement to litigation. Indeed, when persons have a dispute and get together and consider and weigh the facts out of which it arises, and then come to an agreement, fairly and honestly made, and reduce same to writing, should either of such parties later undertake to repudiate and avoid its terms, the evidence he offers, to be sufficient, must be clear and convincing. Such evidence will generally rest in parol, and, if the person seeking to avoid his written contract has been the victim of fraud or misrepresentations sufficient to afford him relief, it is not difficult to produce, nor is it a harsh rule to require, the evidence to point out the fraud, or false statement of fact, or other reasons relied on, so that it can be clearly seen by the court or jury that the contract should not stand.

" ' In the case of Mateer v. Railway Co., 105 Mo. 320, 16 S. W. 839, the court said: "The law favors the compromise and settlement of disputed claims. It is to the interest of the commonwealth that there should be an end to litigation. If those settlements, fairly made and entered into, are to be disturbed upon frivolous grounds, it will often deter these companies from doing justice to their employes, who have received injuries, for fear of future litigation. A wise policy would dictate that they be encouraged to do justice in these cases outside of the courts, and that their settlements should be sustained when they are just and fair." '

" ' In the case of Chicago & A. R. Co. v. Green (C. C.) 114 Fed. 682, the court said:

"And I may add that, if such settlements are to be disturbed because of the impression the judge may entertain that the amount of compensation was inadequate, it would establish a most uncertain and dangerous rule of law. If the employer, believing from the facts in his possession that there was no legal liability for the injury sustained by his employe, nevertheless recognizes a moral obligation to contribute aid of a substantial character to the unfortunate, under the circumstances surrounding his situation at the time, and the employe is willing to accept it, before a court takes upon itself the function of undoing such settlements, the evidence of fraud or incapacity ought to be made clear and persuasive.' " * * *

"In this case the plaintiff had practically recovered; the extent of his injury was fully known; a month had elapsed, so that the liability, or want of liability, of the defendant could have been fully investigated. The shock of the injury and its attending circumstances were over. No unseemly haste had been used. Earlier, plaintiff had declined to consider a settlement; when he became so inclined, the agent came to see him. They began negotiating about 10 o'clock a. m. The plaintiff made large demands. At noon no agreement had been reached; after dinner the matter was resumed until 3 o'clock, when they agreed on the amount. The papers were drawn and taken to a notary public in another building, where the same were read to and carefully explained to plaintiff. He expressed satisfaction and signed them and received the money, and then sent for a tailor to take his measure for and make him a suit of clothes. Plaintiff then spent the rest of his money and two years later filed suit. No act of fraud is shown. The plaintiff merely says: 'I did not understand this legal document. I do not know the meaning of certain words used'—such as 'settle,' 'apparent,' 'compromise'—and yet he admitted that he could speak and write the English language; that he owned and managed his own lands, and had required written leases from his tenants. * * * No claim is made that the release was falsely read, or only partially read, or that any improper influences were brought to bear to induce him to sign it.

"If this settlement can be repudiated under the evidence, it would be indeed rare to find one that would stand; and the defendant would be foolish to further undertake to make settlements with claimants. The evidence having been fully developed and being wholly insufficient, no good purpose will be served in prolonging this litigation."

We are of opinion that the evidence here was insufficient to justify the trial court in submitting this cause to the jury, and the judgment is reversed, and the case remanded for a new trial.

By the Court: It is so ordered.