## ROMANS v. SHANNON.

No. 9805—Opinion Filed Feb. 1, 1921.

(Syllabus by the Court.)

1. **Contracts — Construction — Language of Contract.**

The language used in a contract is to govern its interpretation, and, if such language is clearly explicit and does not involve uncertainty, the words used are to be understood in their ordinary and proper sense, and when the language is plain and unambiguous, extrinsic evidence as to its meaning is not admissible.

2. **Same—Evidence—Parol Evidence Rule.**

In the absence of fraud, accident, or mistake, parol evidence is not admissible to vary or contradict the expressed terms of a written contract. A plain and unambiguous contract leaves no room for construction. The courts will try to give a contract such construction as will make it certain, but cannot change its terms or make a new contract.

3. **Same—Intent of Parties.**

The paramount rule for the construction of a contract is to ascertain the intent of the parties at the time the contract was entered into and to give effect to same if it can be done consistent with legal principles. If the language of a contract is such as to clearly show the intent of the parties, then there is no need to apply any technical rules of construction; for where there is no doubt, there is no room for construction.

Error from District Court, Creek County; Ernest B. Hughes, Judge.

Action by S. P. Romans against L. O. Shannon on contract. Judgment for defendant, and plaintiff brings error. Affirmed.

Charles A. Dickson, E. M. Carter, and McDougal, Lytle & Allen, for plaintiff in error.

Thrift & Davenport, for defendants in error.

PITCHFORD, J. This is an appeal from the judgment of the district court of Creek county, in which judgment was rendered for the defendant. The cause was by an agreement tried to the court without jury.

The plaintiff contracted with the defendant to do certain work and labor in the construction of certain miles or road in Creek county. The material portion of the contract is as follows:

"First. The party of the second part agrees to move dirt for twenty (20c) per yard; loose rock for fifty cents (50c) per yard; solid rock for eighty (80c) per yard, and one and one-half cents for overhaul; twenty-five ($25.00) per acre for clearing right-of-way."

On the trial, plaintiff introduced Mr. Whittlesey, city engineer of Sapulpa, Oklahoma. On cross-examination of this witness, it developed that, in computing the amount of earth moved, plaintiff was given credit for the earth moved out of the excavation and credit for the same dirt when built up into an embankment. That is, if the plaintiff moved 100 yards out of an excavation and

moved it and loaded up a grade, or built up a grade, he would be credited with 100 yards of dirt moved out of an excavation and 100 moved into embankment, and would be entitled to a credit for moving 200 yards of dirt—in other words, pay for two ways.

The witness admitted that, if moving earth as contemplated by the contract in question meant that the plaintiff was to be credited with moving earth once where he took it out of an excavation and put it in a fill, his figures would not be correct; that is, if the contract called for a one-way haul instead of a two-way haul, and if the contract should be construed to contemplate a one-way haul the witness was not prepared to say that the estimate of the defendant was wrong.

At this point the court indicated that in his judgment this method of computing the work done by the plaintiff was not warranted by the contract, and that the plaintiff should be credited with moving the earth only once.

Whereupon the following colloquy occurred between the court and plaintiff's attorney:

"Mr. Lytle: I believe, if your Honor please, that it is a question that the court should be informed upon unless the court feels competent himself. The Court: You don't offer to plead any custom with reference to the construction of this contract. Mr. Lytle: We are not asking to prove a custom, we are not pleading a custom, and we are not talking about a custom, but the question is whether the words used have a technical and distinct meaning in the line of civil engineering. The Court. Do you plead it? Mr. Lytle: No; we don't need to plead it. The Court: Gentlemen, I take the view from this contract that the witness' theory and interpretation of it is erroneous. I take the view that the contract is unambiguous so far as appears upon its face; that the words of the contract are to be given their plain and ordinary meaning. An agreement that one must remove dirt at twenty cents a yard means he must only get twenty cents for handling the dirt; and in that part of the contract which provides that if he hauls the dirt over a certain distance he is to get a cent and a half per cubic yard, there is no ambiguity. It does not occur to me that reasonable minds could differ over the plain, common meaning of these words; and I am rather of the opinion that the objection or motion should be sustained as to the testimony of the witness on moving earth."

To which ruling the plaintiff excepted and asked leave to amend his petition and to make proof by the witness Whittlesey, as follows:

"By alleging that the expression contained in the contract, 'move dirt for twenty cents per yard,' meant and means according to the custom in this vicinity of engineers and of contractors engaged in the building and construction of roads and highways that a person so agreeing to move dirt is entitled under such custom to the amount of compensation per yard for the earth excavated, and is also entitled to the same compensation for the various fills made by him; and in connection with this request to amend our petition, we offer to prove at this time, by this witness, who is city engineer of Sapulpa, that he is familiar and has been for a long while, while the construction of roads and highways and of railroads and of the contracts in connection therewith, and that the term 'move dirt,' when so employed and not modified in any respect, means that the person agreeing to move said dirt shall receive the compensation fixed in the contract for excavating and shall also receive the same compensation for the construction of the fills in the highway."

The court refused the amendment and offer of testimony, and this presents the whole proposition presented on this appeal: That is, was the court correct in refusing the amendment and the testimony offered in support thereof?

It is a principle of law, universally accepted, that, in the absence of fraud, accident. or mistake, parol evidence is not admissible to vary or contradict the expressed terms of a written contract. The language used is to govern its interpretation, if the language is clearly explicit and does not involve an uncertainty, and the words used are to be understood in their ordinary and proper sense, and ordinarily where there is no uncertainty, and when the language is plain and unambiguous, extrinsic evidence as to its meaning is not admissible.

The purpose of the law is to try to ascertain the intentions of the parties concerned; however, when the language used is ambiguous, or when the words are used in a local or technical sense, peculiar to certain trades or occupations, parol testimony of usage or custom may be resorted to, but this exception is only allowed to explain what is ambiguous, and where the words used are plain, uncertain, parol evidence should not be permitted on the theory that custom would give an entirely different meaning.

The rule of construction stated by Elliott on Contracts, vol. 8, 1913-1918 Supplement, sec. 1506, is as follows:

"A plain and unambiguous contract leaves no room for construction. The courts will try to give a contract such construction as will make it certain, but cannot change its terms or make a new contract."

In Strange et al. v. Hicks et al., 78 Okla. 1, 188 Pac. 347, it is said as follows:

"The paramount rule for the construction of a contract is to ascertain the intent of the parties at the time the contract was entered into and to give effect to same if it can be done consistent with legal principles. If the language of a contract is such as to clearly show the intent of parties, then there is no need to apply any technical rules of construction, for where there is no doubt, there is no room for construction."

In Wolf et al. v. Blackwell Oil & Gas Co. et al., 77 Okla. 81, 186 Pac. 484, the court says:

"The language of a contract is to govern its interpretation, if the language is clear and explicit and does not involve an absurdity, and the whole of such contract is to be taken together so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others, and the words to be understood in their ordinary and popular sense, unless used by the parties in a technical sense."

In Tidal Oil Co. v. Roelfs, 77 Okla. 183, 187 Pac. 486, the court said:

"It is due the parties to a contract in writing to assume that they know and understand the logical and grammatical use of the words, phrases, and clauses chosen by them to convey the thought and purpose of their contract."

The plaintiff relies primarily upon the case of Winemiller v. Page et al., 75 Okla. 278, 183 Pac. 501.

In the case just cited, Winemiller, by parol agreement made with Snyder, agreed to procure for Snyder certain oil and gas leases, and, as a consideration for said services, Snyder agreed to pay Winemiller reasonable and necessary expenses and to carry said Winemiller for one-eighth interest fee in the first well to be drilled upon each tract of land so leased, and to further carry the said Winemiller for one-eighth interest in all subsequent wells drilled upon said lands. A controversy arose over the meaning of "carried for one-eighth."

In the body of the opinion, the following language is used:

"If, as we believe, this phrase is unintelligible to persons not familiar with the oil business, and particularly that branch of it pertaining to procuring oil and gas leases, then the plaintiff himself presented a contract for construction which required the evidence of experts to aid the courts in determining its meaning. It is the duty of the courts to construe contracts, whether oral or written, and where words or phrases of a technical nature connected with any art, science, or occupation are used, witnesses, familiar with such art, science, or occupation, may be called for the purpose of explaining such language."

We are unable to see, however, where the rule in the Winemiller case is in any respect applicable to the case at bar. In the instant case, the phrase, "to move dirt for 20 cents per yard," is not unintelligible and does not call for expert testimony.

In Willmering v. McGaughey, 30 Iowa, 205, Am. Rep. vol. 6 (extra ann.), in an action upon a written contract for the sale of hogs, to be delivered at Washington, Iowa, at H. Willmering's option, by giving 10 days' notice at any time in June, it is held, first, that parol evidence was not admissible to show how such contracts were understood by stock dealers, to which class the parties belonged; and second, that the contract obliged defendant to make the delivery during the month specified, without notice; and that the giving of notice to deliver on a particular day was at plaintiff's option.

Further on in the opinion, it is said:

"When a new and unusual word is used in a contract, or when a word is used in a technical or peculiar sense, as applicable to any trade or branch of business or to any particular class of people, it is proper to receive evidence of usage to explain and illustrate it; and that evidence is to be considered by the jury; and the province of the court will then be to instruct the jury what will be the legal effect of the contract or instrument, as they shall find the meaning of the word modified or explained by the usage. But when no new word is used, or when an old word, having an established place in the language, is not apparently used in any new technical, or peculiar sense, it is the province of the court to put a construction upon the written contracts of parties, according to the established usage of language, as applied to the subject-matter." Citing Eaton v. Smith, 20 Pick. (Mass.) 150; Brown v. Orland, 36 Me. 376; Burnham v. Allen, 1 Gray (Mass.) 496.

The judgment of the trial court is, therefore, affirmed.

HARRISON, C. J., and JOHNSON. NICHOLSON, ELTING, and MILLER, JJ., concur.