OUTCAULT ADVERTISING CO. v. WAURIKA NAT. BANK.

No. 13295—Opinion Filed March 11, 1924.

Rehearing Denied June 24, 1924.

1. **Contracts—Oral Negotiations Superseded by Writing.**

The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.

2. **Same—Parol Evidence.**

The execution of a contract in writing supersedes all the oral negotiations or stipulations concerning its terms and subject-matter which preceded or accompanied the execution of the instrument, in the absence of accident, fraud, or mistake of fact; and any representation made prior to or contemporaneous with the execution of the written contract is inadmissible to contradict, change, or add to the terms plainly incorporated into and made a part of the written contract.

3. **Same—Fraud as Affecting Writing.**

If a party is induced to sign a contract by fraud, he can, of course, avoid it for that reason. It is, however, clear that merely falsely representing to a man in possession of his faculties and able to read that a writing embodies their verbal understanding is not the fraud the law means.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Jefferson County; Cham Jones, Judge.

Action by Outcault Advertising Company against Waurika National Bank. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Bridges, Vertrees, & Anderson, for plaintiff in error.

Green & Pruet, for defendant in error.

Opinion by RUTH, C. This action was brought by the plaintiff in error, plaintiff below, against the defendant in error, defendant below, wherein the plaintiff seeks to recover judgment, basing the action on a written contract. The parties will be designated as they appeared in the court below.

Plaintiff alleges that on November 20, 1916, plaintiff and defendant executed the following written contract:

"To Outcault Advertising Company,

"508 South Dearborn St., Chicago, Ill.
"Order No. 8193.
"Date 11-20-1916.

"Ship us at our expense your bank ad service which covers a period of two years, beginning December 5th, 1916, this service to consist of:

"52 cuts for each year,
"53 ads for cuts for each year (printers copy).
"52 desk sets for each year,
"1 box of type for each year,
"50 display cards,
"4 picture Slides for each year,
"One (1) Signature plate,
"500 Christmas banking club outfits for each year.

"We agree to pay $4.60 a week for two years; payable net cash as follows: One half of each yearly amount in twelve (12) monthly payments, commencing with the be-

ginning date of service and the other one-half to be paid on January 1st, each year, following date of this contract.

"This contract to continue in full force and effect for a further period of three (3) successive years on the same conditions unless we notify you to the contrary, in writing, on or before February 1, 1918.

"As unless so notified, you are hereby instructed to proceed each year to prepare and ship us your ad service.

"We have exclusive right to use the above bank "AD" service in our city only, and to hold type, cuts, and other display matters subject to your order when the contract expires.

"Failure to pay any installments when due renders the full amount of this contract due.

"The extension of this contract, when entered upon, can not be terminated.
          "Waurika National Bank,
          "By Donald Stuart, V. P.
          "Town, Waurika,
          "State, Oklahoma.
          "T. M. Wheles, Salesman."

Plaintiff's petition further alleges, under said contract they made delivery of goods for two years and received payment for same from defendant. That defendant failed to notify plaintiff on or before February 1, 1918, that defendant desired the same discontinued, and the plaintiff purchased all materials and completed the work necessary to furnish the goods and service for three more years; that plaintiff shipped the goods for the years 1918-1919, and the same were refused; that shipment was not made for the year 1920 for the reason that before the time of shipment, defendant elected to breach its contract, and plaintiff prays judgment for the advertisements contracted for, for the years 1918, 1919, and 1920.

Defendant's answer consists of a general denial and for further defense, admitting the execution of the contract of November 20, 1916, alleges it was for a period of "two years" and:

"Defendant at no time agreed to purchase said advertising service for an additional period of three years; that if such statement was contained in a memorandum signed by this defendant, that said provision was so obscured and hidden away among the other provisions of said agreement that the same was unknown to this defendant, and that by so obscuring said provision the defendant was induced by fraud to sign such memorandum."

Defendant further alleges the written memorandum did not contain all of the agreement but:

"That it was further agreed that if the service was unsatisfactory, the defendant should have the right to return same and be absolved from any further liability."

Defendant admits it refused to accept the service for 1918-1919-1920 and caused same to be returned to the plaintiff.

The cause was tried to the court upon the issues joined; judgment was rendered for defendant, and this cause is brought here for review.

Plaintiff assigns as error:

"(1) The admission of incompetent, irrelevant, and immaterial evidence."

"(2) The judgment is not supported by the evidence; is contrary to the evidence; is against the weight of the evidence; and is contrary to law, and for errors of law occurring at the trial of the cause."

The plaintiff introduced the contract signed by defendant and testified that under the contract it had furnished the service two years; that the same was apparently satisfactory as they had been paid for the same by the defendant for that period; that defendant did not notify them prior to February 1, 1918, of its option to cancel the contract for the years 1918, 1919, 1920; that plaintiff purchased all materials necessary to complete the contract for the said three years and performed all labor necessary to complete the contract and had suffered the loss and damages as alleged by reason of the defendant's refusal to pay for the service of 1918-1919-1920.

Defendant on its behalf introduced as its witness Donald Stuart, who testified he was then president of the defendant bank, that he had been in the banking business ten years; could read and write; there was nothing wrong with his eyesight; that he signed the contract introduced by plaintiff while he was vice president of the bank, that at the time of the trial he could detect no difference in the color of the ink or style of type in the three years option clauses that would indicate an alteration of or addition to the contract since he signed it.

Over the objections of plaintiff the court admitted the following questions and answers on behalf of the defendant:

"Q. Did the traveling salesman call and sell these supplies? A. Yes, sir. Q. What conversation did you have with him? A. We bought service for two years. Q. Now, during the conversation had with this traveling salesman, state to the court whether there was ever any other contract or any other one mentioned? A. There was not. Q. Was there any mention made of any writing to continue or discontinue this three year con-

tract? A. There was not. Q. So far as you understand, as far as the bank intended to go with the service they did; paid for it and paid for all the service it got? A. Yes, sir. Q. At the time you signed that contract Mr. Stuart, were you aware that the provision in that contract had these words: 'This contract to continue in full force and effect for a further period of three (3) years, successive on the same conditions unless we notify you to the contrary, in writing, on or before February 1, 1918, and unless you are so notified you are to proceed each year to prepare and ship us your "AD" service?' A. I did not."

This constitutes, substantially, all the evidence of the defendant, all of which was properly and timely objected to and exceptions saved. The defendant at no time testifies or intimates that the three year continuation clauses were not in there when he signed the contract, or that any fraudulent statement was made to procure the execution thereof. The contract signed by the defendant is short and unambiguous, and can be read in its entirety in less than two minutes by any person of average intelligence, and under all the evidence the defendant will not be heard to say that fraud was perpetrated upon him in the procurement of his signature thereto.

To admit the testimony above set forth was manifestly error.

Section 5035, Comp. Stat, 1921, provides as follows:

"The execution of a contract in writing whether the law requires it to be written or not, supersedes all oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument."

In McNinch v. Northwest Thresher Co., 23 Okla. 386, 100 Pac. 524, it is held:

"The execution of a contract in writing supersedes all oral negotiations or stipulations concerning its terms and subject-matter which preceded or accompanied the execution of the instrument in the absence of accident, fraud or mistake of fact: and any representation made prior to or contemporaneous with the execution of the written contract is inadmissible to contradict, change, or add to the terms plainly incorporated into and made a part of the written contract.

"If a party is induced to sign a contract by fraud, he can, of course, avoid it for that reason. It is however clear that merely falsely representing to a man in possession of his faculties and able to read, that a writing embodies their verbal understanding is not the fraud the law means."

See, also, Early v. King, 38 Okla. 206, 135 Pac. 286; Oland v. Malson, 39 Okla. 456, 135 Pac. 1055; Romaus v. Shannon, 80 Okla. 199, 195 Pac. 298; First National Bank v. Richburg, 75 Okla. 1, 181 Pac. 145; Western Silo Co. v. Stobaugh, 75 Okla. 73, 182 Pac. 670.

The evidence failing to show fraud in the procurement of the contract, and no competent material evidence being offered by the defendant in support of the defense set up in his answer, and for error of the court in permitting the introduction of oral evidence to vary or alter a contemporaneous written contract. the judgment of the court below should be reversed and this cause remanded with instructions to grant the plaintiff a new trial.

By the Court: It is so ordered.