## GREEN et al. v. COX MACHINERY CO.

No. 16224—Opinion Filed Jan. 19, 1926.

Rehearing Denied March 16, 1926.

**1. Evidence—Parol Evidence to Vary Written Contract—Writing as Superseding Oral Negotiations.**

The execution of a contract in writing supersedes all oral negotiations or stipulations concerning its terms and subject-matter which preceded or accompanied the execution of the instrument, in the absence of accident, fraud, or mistake of fact, and any representations made prior to or contemporaneous with the execution of the written contract are inadmissible to add to the terms plainly incorporated into and made a part of the written contract, and constitute no defense to an action on such written contract.

**2. Contracts—Fraud—Misrepresentation as to Contents.**

If a party is induced to sign a contract by fraud, he can of course avoid it for that reason. It is clear, however, that merely falsely representing to a man in possession of his faculties and able to read, that a writing embodies their verbal understanding is not the fraud the law means.

**3. Reformation of Instruments — Mutual Mistake—Diligence in Inquiry.**

Where a party relies for reformation of a written instrument on ground of mutual mistake. it must be such mistake as he could not by reasonable diligence get knowledge of when he was put on inquiry, for, if by such reasonable diligence he could have obtained knowledge of the fact, equity will not relieve him, since that would be to encourage culpable negligence.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Ottawa County; J. J. Smith, Judge.

Action by the Cox Machinery Company against F. I. Green and four others, copartners, trading as the Co-operative Mining Company. After answer filed, motion by plaintiff for judgment on the pleadings sus-

tained. Judgment for plaintiff, and defendants appeal. Affirmed.

Clyde Morsey, for plaintiffs in error.

Frank Nesbitt, for defendant in error.

Opinion by RUTH, C. The parties hereto will be designated as they appeared in the trial court. The Cox Machinery Company, as plaintiff, brought its action against F. I. Green, Ralph Rensch, O. Clark, Thomas Herbert, and N. E. Humphries, copartners, trading as the Co-operative Mining Company, praying judgment on nine promissory notes aggregating $1,675, together with interest, costs, and attorneys' fees, and for foreclosure of a chattel mortgage executed by defendants covering certain mining machinery sold by plaintiff to defendants. The second cause of action is for judgment in the sum of $70.84 for certain supplies thereafter sold by plaintiff to defendants. The notes were payable monthly, and plaintiff alleges the note for $100 due March 10, 1924, was paid, and the notes due April and May 10th, respectively, for $150 each, and the notes due June and July 10, 1924, of $200 each, are past due and unpaid. The notes provide for an attorneys' fee. The mortgage attached to and made a part of the petition provides that if any of the notes are not paid when due, the plaintiff may declare all notes due and payable, or if the plaintiff deem its security unsafe or insecure, it may retake and sell the mortgaged property by advertisement according to law. The mortgage further provides that if the machinery, purchased by defendants and covered by the mortgage, shall be turned back to plaintiff before one-third of the full purchase price is paid, the defendants will bear the expense of its return to the storage yards of plaintiff.

For answer defendants admit the execution of the notes and mortgage, and also admit the indebtedness of $70.84, as set forth in the second cause of action. For further answer, defendants state that the negotiations for the purchase of the machinery were conducted by W. H. Horton, then a member of the copartnership, and George B. Cox, of the plaintiff company, and that these negotiations were carried on several months prior to the execution of the notes and mortgage, and that several months after these negotiations were concluded, but several months before the notes and mortgage were executed, Horton severed his connection with the copartnership. Defendants then allege that at and prior to the time of the execution of the notes and mortgage, it was understood by and between the plaintiff and defendants, that the sale was made upon the express condition that if the mine did not prove profitable, the defendants might return the property, and the plaintiff would not charge them anything for the use thereof, but would accept the used machinery in full payment of the purchase price and would cancel the notes and mortgage. In other words, the defendants pleaded that plaintiff said substantially:

"Here, you people take $1,775 worth of our machinery; install it in your mine; use it to suit yourselves, as long as you desire, and if your mine is not profitable, bring the used machinery back, and we will not charge you one cent for the same."

The defendants further state that some months after this oral understanding, the notes and mortgage were presented for execution, and F. I. Green (a copartner) as agent for the defendant company—

"Being in doubt as to whether the said contract expressed the true intention of the parties and provided for the return of the property in the event the mine did not prove profitable, realizing that a large portion of said contract was in fine print and that the said contract was long and not easily understood, and seeing that the wording of said contract was ambiguous and confusing in its meaning, for the purpose of making sure that said contract expressed the true meaning and intention of the parties thereto, before signing said instruments, the said F. I. Green asked the said George B. Cox whether or not said contract contained the condition providing that the property might be returned to plaintiff in full satisfaction of said purchase price in case the mine should prove unprofitable, and that George B. Cox, believing that said provision was fully expressed therein, assured Green that said clause was in said contract (mortgage), whereas, only a part thereof was written in said instrument, and thereupon said note and mortgage were executed under the mutual mistake and misunderstanding of plaintiff and defendants as to the true meaning and effect of the words employed in expressing the agreement between the parties: that had it not been for said mutual mistake, the defendants would not have executed the notes and chattel mortgage"

—and they pray its reformation. Defendants then state the mine proved unprofitable, and tender the machinery into court, and pray cancellation of the notes and mortgage.

The second ground of defense is practically the same as the first, except defendants state that because the mine proved unprofitable, and the plaintiff will not take its worn machinery back, and cancel the notes and mortgage and absolve defendants from all liability, the consideration for the notes and mortgage has wholly failed. Plaintiff filed its motion for judgment on the plead-

ings for that (among other things) the answer totally and completely fails to state any defense to the payment of the notes and mortgage sued on, and defendants admit the execution of the same. The court sustained the motion, entered judgment for plaintiff, and defendants appeal and assign as error the order of the court sustaining the motion for judgment and rendering judgment for plaintiff. Defendants in their brief cite opinions of this court to the effect that:

"Motions for judgment on the pleadings are not looked on with favor."

With this we are agreed, and it is unnecessary to comment further thereon.

Defendants cite Peck v. First National Bank. 50 Okla. 252, 150 Pac. 1039, where it was held:

"The pleading must be clearly bad in order to justify a judgment on motion in favor of the other party. If there is any reasonable doubt as to the sufficiency of the pleading, judgment on motion will not be rendered."

With this opinion we are also in accord, but in the instant case the answer is so clearly bad that there can be no reasonable doubt of its insufficiency to constitute a defense.

Negotiations were entered into some months prior to the execution of the notes and mortgage, and it is well settled in this state and all other states that:

"The execution of a contract in writing supersedes all oral negotiations or stipulations concerning its terms and subject-matter which preceded or accompanied the execution of the instrument, in the absence of accident, fraud, or mistake of facts, and any representations made prior to or contemporaneous with the execution of the written contract are inadmissible to contradict, change, or add to the terms plainly incorporated into and made a part of the written contract." Fuller v. Caraway, 97 Okla. 110, 221 Pac. 79; Bolon v. Massey, 101 Okla. 8, 222- Pac. 685; Cromwell v. Lewis, 98 Okla. 53, 223 Pac. 671.

It therefore follows as a necessary corollary that if the evidence to support an allegation in a petition, answer, or cross-petition is inadmissible, such allegation of itself constitutes no cause of action or grounds of defense.

The defendants were men of mature years; they were under no legal disabilities; they possessed all the faculties of normal men. They evidently could read, as they plead, "the mortgage was largely in fine print. and was long and ambiguous and confusing." It follows they must have read the contract, and not understanding the

meaning of the words, they asked plaintiff if the mortgage contained a proviso that they might return the machinery if the venture proved unprofitable, and they would be absolved from liability for the purchase price, and plaintiff said it did. This is not available as a defense.

"If a party is induced to sign a contract by fraud, he can, of course, avoid it for that reason. It is, however, clear that merely falsely representating to a man in possession of his faculties and able to read, that a writing embodies their verbal understanding is not the fraud the law means." Outcalt Adv. Co. v. Waurika National Bank, 100 Okla. 96, 227 Pac. 144; Western Silo Co. v. Stobaugh, 75 Okla. 73, 182 Pac. 670; First National Bank v. Richburg, 75 Okla. 1, 181 Pac. 145; Romans v. Shannon, 80 Okla. 199, 195 Pac. 298; Oland v. Nealson, 39 Okla. 456. 135 Pac. 1055; Early v. King. 38 Okla. 206. 135 Pac. 286.

We think the provision in the mortgage, that upon default in the payment of one or more of the notes, the mortgagee might elect to declare all notes due and payable, and mortgagee might retake the property and advertise and sell it according to law and apply the proceeds to the payment of the notes, is plain and unambiguous, and where one able to read executes a written instrument, plain and unambiguous in its terms, he is prima facie bound by the same and guilty of such negligence in his ignorance of its provisions as will preclude him from obtaining relief therefrom upon the ground of mistake. Guthrie & W. Ry. Co. v. Rhodes, 19 Okla. 21, 91 Pac. 1119, 21 L. R. A. (N. S.) 490; T. and H. Smith & Co. v. Thesmann, 20 Okla. 133, 93 Pac. 977, 15 Ann. Cas. 1161; Herron v. Rumley Co., 29 Okla. 317, 116 Pac. 952; Pac. Mutual Life Ins. Co. v. Coley, 62 Okla. 161, 162 Pac. 713; Colonial Jewelry Co. v. Bridges, 43 Okla. 813, 144 Pac. 577; Ely Walker D. G. Co. v. Smith, 69 Okla. 261, 160 Pac. 898.

In 1 Story's Equity Jur., par. 146, the rule is laid down as follows:

"It is not, however, sufficient in all cases to give the party relief that the fact is material; but it must be such as he could not. by reasonable diligence get knowledge of when he was put on inquiry, for, if by such reasonable diligence he could have obtained knowledge of the fact, equity will not relieve him, since that would be to encourage culpable negligence." See 23 R. C. L. par. 46, p. 350; Wood v. Patterson, 4 Md. Ch. 335; Haggerty v. McCanna, 25 N. J. Eq. 48; Pope v. Hoopes, 90 Fed. 451, 23 C. C. A. 595; Montgomery v. City Council, of Charleston, 99 Fed. 825, 40 C. C. A. 108; Grymes v. Sanders, 93 U. S. 55, 23 L. Ed. 798.

It were idle to multiply authorities or

pursue inquiry further. To sustain the contention of defendants would tear down and destroy the very foundation of the law relative to written contracts, and in all transactions we would be compelled to rely upon the fleeting memory of mankind and their inclination to adhere to the truth regardless of its effect upon their personal interests.

The judgment of the trial court will therefore be and is hereby affirmed.

By the Court: It is so ordered.