STATE, Respondent, v. PARKER, Appellant.

(241 N. W. 319.)

(File No. 7099. Opinion filed March 7, 1932.)

*Martin & Martin,* of Hot Springs, for appellant.

*M. Q. Sharpe,* Attorney General, and *Benj. D. Mintener,* Assistant Attorney General, for the State.

RUDOLPH, J.   The appellant, Parker, was the owner of certain real estate in Custer county, S. D.   On June 26, 1923, an agreement was entered into between the appellant and the Custer State Park Board, whereby it was agreed that a deed to appellant's land executed by the appellant should be "placed in the First National Bank, Custer, South Dakota, in escrow."   The grantee in the deed was the respondent, state of South Dakota. The condition of the delivery of the deed in escrow was as follows: "If the State of South Dakota shall pay or cause to be paid unto the First National Bank, Custer, S. D., to the credit of C. M. Parker, the sum of $625.00 on or before July 3, 1923, and the further sum of $4,375.00 on or before July 1, 1925, then and in that event the within deed * * * to be delivered to said state of South Dakota.   In case of failure to make the above payments on or before the dates specified the within deed to be returned to said C. M. Parker. * * * In the event that the said state of South Dakota should fail to make the payments on or before the dates specified or any of them, any payments previously made shall be retained by the said C. M. Parker as consideration for giving this option.   Satisfactory abstract of title for said premises will be completed and submitted to the Park Board for approval and acceptance by the Attorney General.   And it is further agreed that

the first payment shall be held in trust by the First National Bank, Custer, S. D., until the abstract of title has been approved by the Attorney General."

A state warrant in payment of the $625 which was to be paid under the said agreement on or before July 3, 1923, did not reach the Custer State Bank until July 12, 1923, and was not cashed by the Custer bank until August 9, 1923. On July 4, 1923, the appellant, Parker, orally notified the First National Bank of Custer not to accept any payment under said contract, by reason of the failure of the state to make the first payment of $625 on or before July 3, 1923, and demanded the bank to return the deed theretofore placed in the bank in escrow, and demanded cancellation of the said escrow agreement. The appellant made a similar demand upon the First National Bank again upon a different occasion, prior to July 12, 1923. At the time the escrow agreement was signed, the appellant, Parker, executed an instrument directed to the First National Bank, Custer, S. D., as follows: "You are hereby authorized and instructed to receive and pay all moneys received by you on my escrow agreement to the State of South Dakota as follows: First pay the cost of abstracts and recording costs incurred in this deal. Second pay McKinney & Allen the amount of tax certificates they hold together with the amount with interest of their note. Third all balance left after paying the above to be applied on my notes to the First National Bank, Custer, S. D."

The bank proceeded to distribute the $625 received by it on August 9, as directed by the instrument last above set out. On February 4, 1925, the appellant, Parker, notified the bank in writing: "Not to accept, place to my credit, or distribute to my creditors, any money that may be paid by the State of South Dakota, the State Park Board, or any officer of the State of South Dakota, as payment on my land located within the State Park and in Custer County, S. D."

On the 25th day of June, 1925, there was delivered to the First National Bank of Custer a state warrant in the sum of $4,375 in payment of the second payment due under the contract. The bank having been notified by the appellant, Parker, not to accept any further payments, refused to deliver the deed but ac-

cepted the warrant, and thereafter on or about July 28, 1925, upon the furnishing by the state park board of an agreement to indemnify the bank for any damage it might sustain on account of delivering the deed held in escrow, the bank did deliver to the respondent the deed which it held and which deed was accepted by the respondent. The bank disbursed this $4,375 as follows: $3,064.30 was remitted to McKinney and Allen in satisfaction of the mortgage upon said premises; the balance was left on deposit in said bank until the 8th day of January, 1926, to the credit of Custer State Park Board. On the 8th day of January, 1926, an agreement in writing was entered into between the First National Bank of Custer and the appellant, Parker, whereby all matters in dispute between the bank and Parker were compromised, adjusted, and settled. Among these matters was the claim for damages against the bank on account of the delivery to the state of the deed to the land involved in this action. In this agreement it was stipulated that as a part of the settlement of all matters in dispute between the bank and Parker, the balance of this payment by the state amounting to $1,310.70, which had not been disbursed by the bank in satisfying mortgages upon the land, was to be applied by the bank on the balance of the indebtedness due the bank by the appellant, Parker, and this balance of $1,310.70 was thereafter used in partial satisfaction of Parker's indebtedness to the bank. This agreement further contained the following: "It is understood and agreed that this settlement in no way affects or prejudices the rights of the said Parker in and to the land hereinbefore referred to or the possession thereof, and in no way involves or affects such claims as he may have had or may now have against the State of South Dakota or the Custer State Park Board in connection with the delivery of the Deed of the said premises to the said parties, or either of them, and in no way affects his claims against either of the said parties growing out of any matters between them; the purpose of this memoranda in relation thereto being simply to release and discharge the First National Bank of Custer or any liability in connection with the said transactions— the said Parker specifically reserves his full right to either prosecute or defend any actions with either the State of South Dakota or the Custer State Bark Board concerning any matters of difference between them."

■ From the above statement of facts and upon the record there are two questions presented, a decision of either one of which in favor of the respondent will dispose of the case. The first question is: Was it within the authority of the bank, in the first instance, to deliver the deed and thereby bind the appellant, Parker? Second, even if it were not within the authority of the bank, in the first instance, to deliver the deed and bind the appellant, Parker, did Parker subsequently ratify the actions of the bank in delivering the deed? To our minds the evidence of ratification is clear. This renders it unnecessary to discuss the correctness of the delivery in the first instance. There can be no dispute under this record that the appellant, Parker, after knowing all the facts and circumstances, accepted and retained the entire purchase price. Prior to January 8, 1926, when Parker executed this last agreement, he had authorized the bank, out of the purchase price to be paid by the state, to satisfy the incumbrances (tax certificates and mortgage) upon the land. This the bank did, and by his agreement of January 8 the appellant, Parker, approved this action on the part of the bank. Not only did he, by this agreement, approve this action on the part of the bank, but Parker accepted the balance of the purchase price remaining in the hands of the bank and undisposed of, and authorized the bank to apply this balance upon his indebtedness to the bank. The entire purchase price, paid by the state has, therefore, been accepted by Parker, and accepted by him at a time when he knew all of the facts which he now claims invalidated the delivery of the deed to the state by the bank in the first instance. In other words, he is here seeking to have the deed delivered to the state canceled, after he has accpted and retained the benefits paid for the deed, with full knowledge of all the facts upon which he here seeks to recover.

■ "Improper delivery of deed held in escrow may be ratified by person as to whom delivery was improper." Sunderlin v. Warner, 42 Idaho 479, 246 P. 1, 2; Eichlor v. Holroyd, 15 Ill. App. 657; Oland v. Malson, 39 Okl. 456, 135 P. 1055; Foster v. Los Angeles Trust & Savings Bank, 36 Cal. App. 460, 172 P. 392; Weghorst v. Clark, 66 Colo. 535, 180 P. 742. In an early case in this state, Wyckoff v. Johnson, 2 S. D. 91, 48 N. W. 837, it was held that a principal cannot avail himself of the unauthorized acts of his agent, so far as it is advantageous to him, and repudiate

the obligations. Thus in the instant case, the appellant cannot accept the purchase price paid by the state, at a time when he knew his agent, the escrow holder, had delivered the deed contrary to his instructions, and now be heard to say that his agent, the escrow holder, violated his instructions, and that the deed should be canceled. Mechem on Agency (2d Ed.) p 316, clearly states the rule as follows: "There is, further, ordinarily no more certain and satisfactory a method of manifesting approval of an act than by voluntarily and knowingly taking the benefits which flow from its performance; and it is a general rule, of constant application in the law of agency, that he who, voluntarily and with knowledge of the facts, accepts the benefit of an act purporting to have been done on his account, by his agent, thereby ratifies it and makes it his own as though he had authorized it in the beginning."

■ The appellant makes some claim that that part of the agreement of January 8, 1926 (above set out) whereby he reserved any right to prosecute or defend any action against the state concerning any matters of difference between them, defeats any claimed ratification on his part. With this contention we are unable to agree. The appellant can't "eat his cake and have it too." By voluntarily accepting the purchase price paid by the state, knowing all of the facts, the appellant "ate his cake." He is now here on the theory that the very instrument that consumed his cake provided that he should "have it too." However, getting away from the homely adage, we are of the opinion that even if a person has an express intent not to ratify, this does not prevent a ratification if he had in fact by his acts ratified the action of his agent by accepting the benefits of the transaction at a time when he knew all of the facts. See Campbell v. Millar, 84 Ill. App. 208; Hazard v. Spears, 4 Keyes (43 N. Y.) 469; Mechem on Agency (2d Ed.) 314.

■ ■ The plaintiff commenced this action for the purpose of quieting title. The plaintiff based its title to the land upon the escrow agreement and the deed above referred to. The defendant as a part of his answer counterclaimed, alleging certain damage done by elk, belonging to the plaintiff, trespassing upon the land. The alleged damage extended over a period of years while the defendant was the owner of the land. The trial court dismissed the counterclaim, and in our opinion this was proper. Under the

provisions of section 2354, Rev. Code 1919, this counterclaim could be justified only upon one of two grounds; either it must be a cause of action arising out of the transaction set forth in the complaint, or it must be connected with the subject of the action. The title to the land and the facts upon which it was founded constituted the subject of this action. The trespass of elk and the damage caused thereby plainly did not affect the title to this land, the only subject being determined, and was not, therefore, connected with the subject of the action. Neither did the damage done by the elk in trespassing upon the land arise out of the transaction set forth in the complaint as the foundation of plaintiff's claim. The transaction upon which plaintiff asserted his title (the subject of the action) was the delivery of the deed. The damage done by elk had nothing to do with the delivery of the deed or the title to the land. We have carefully reviewed the cases cited by appellant and find nothing therein contrary to the views above expressed. The facts in the cited cases are so dissimilar to the facts here presented that a review of those cases would not be helpful. The counterclaim, in our opinion, being improper for the reasons stated, we expressly refrain from deciding or discussing the right to counterclaim for alleged damages, in an action commenced by the state, which damages would not be made the basis of an independent action against the state.

The judgment and order appealed from are affirmed.

CAMPBELL, P. J., and POLLEY and WARREN, JJ., concur.

ROBERTS, J., disqualified and not sitting.