## TULOMA PIPE & SUPPLY CO. v. TOWNSEND.

No. 27829. March 1, 1938.

Rehearing Denied March 22, 1938.

S. F. Goldwyn, for plaintiff in error.

R. K. Robertson and Wm. Taylor, for defendant in error.

RILEY, J. L. D. Townsend, defendant in error, filed an action against Tuloma Pipe & Supply Company, plaintiff in error, seeking to recover an alleged balance due under a contract. From a verdict of $886.08, the amount sued for, defendant brings this appeal.

The parties will be termed plaintiff and defendant, as they appeared below.

The only question is whether the judgment and decree of the court is sustained by the evidence.

On about the 10th of June, 1935, the plaintiff, who owned a certain leasehold in Creek county with an oil well thereon, was approached by H. E. Harvey, defendant's agent, who desired to negotiate a purchase of the same. After preliminary discussions and an inspection of the leasehold and equipment thereon, Harvey called the defendant and was directed to bring plaintiff to its offices in Tulsa.

Mr. Madvine, president of the defendant company, discussed the deal with plaintiff in the presence of Harvey, and then all went to the office of defendant's attorney, where they prepared a contract, the pertinent parts of which are:

"It is agreed and understood by the parties hereto that Buyer represents that there are located on said leasehold estate and in said well the following described oil field equipment and casing, to wit:

"1 25 H. P. Franklin engine; 1 wood derrick; 2 100 bbl. tanks; approximately the following quantities of pipe, namely 5,000 feet of 2" line pipe; 3,165 ft. of 5-3/16" lapweld casing; 350 ft. of 15½" lapweld casing; 840 ft. of 12½" lapweld casing; 1,632 ft. of 10" lapweld casing; and 3,450 ft. of 2" tubing and rods.

"It is distinctly understood by the parties hereto that upon approval of title by buyer's attorney, the buyer shall pay to seller the sum of seventeen hundred fifty ($1,750.) dollars cash, and, in the event buyer desires to produce from said lease, then, and in that event, the balance of eight hundred fifty ($850) dollars shall be paid to seller within six months from the date said amount of

seventeen hundred fifty ($1,750) shall have been paid. In the event Buyer desires to remove the equipment from the said lease and the casing from said well at any time within six months from the date the said sum of seventeen hundred fifty ($1,750) dollars shall have been paid, and it is discovered that the quantities, as more specifically set out hereinabove, are not located thereon or in said well, then an adjustment shall be made on the amounts lacking based on the market value of said equipment and casing, not to exceed the sum of eight hundred fifty ($850) dollars. It is distinctly understood, however, that seller shall not be responsible to buyer for any casing left in the hole when said casing is removed therefrom.

"It is further agreed that in the event buyer decides to remove said casing from the well within the time specified above and that upon pulling the same there is contained therein a string of 6⅝" casing or a string of 8¼" casing, then buyer agrees to pay to seller the additional sum of twelve and one-half cents (12½c) a foot for the 6 5/8" casing recovered from said well, or the sum of seventeen and one-half cents (17½c) a foot for the 8¼" casing recovered from said well.

"It is distinctly understood that in the event Buyer's attorney does not approve Seller's title to the property or seller cannot comply with whatever requirements are made by buyer's attorney within ten days' time after examination of abstract of title, then this contract shall become null and void and both parties hereto shall automatically be released therefrom. Upon approval of said title and payment of said sum of seventeen hundred fifty ($1,750) dollars, seller shall execute proper instruments conveying to buyer all of the said property included herein."

Title was approved, $1,750 paid plaintiff, and defendant took possession. After some efforts to make the well a producer, the defendant decided to remove the equipment.

Much of the casing was pulled, including some 6⅝" and 8¼" valued at $36.08, but only a small quantity of the 12½" and the 15½" casings were obtained. The remainder of these two sizes were cemented together and could not be removed.

To the plaintiff's petition, which sought recovery for balance due under the contract, defendant filed an answer and cross-petition verified by Mr. Madvine, pertinent portions of which are as follows:

"Defendant in this regard says that at the time of the negotiations between the plaintiff and defendant, by and through its agent, H. E. Harvey, looking to the withdrawal of the casing from the well, the basement below the derrick floor at the said well was concreted; that is to say, consider-

able concrete had been poured into said basement at the time said well had been completed covering and surrounding the casing in said well and that but the top joint of the 5-3-16 casing protruded from and extended above the said concrete block, the defendant was informed by the plaintiff that there was no concrete between the strings of casing, as the spaces between said strings had been bridged at the top with cement and gunny sacks; that this defendant, therefore, was compelled to and did rely upon the aforesaid statement, as examination of same was impossible without first pulling said casing from the well. * * *"

And:

"The inclusion of the clause contained therein, exempting seller from any liability for pipe left in the hole, had application only to the parting of any string of casing experienced in the withdrawal of same from the well and did not in anywise refer or have application to any pipe left in the hole by failure to pull due to or occasioned by such concrete. Defendant further states that such cause was the only one within the discussion, contemplation and intent of the parties as coming within the purview of the language used, but that by mutual mistake upon the part of both the plaintiff and defendant in their assumption of the nonexistence of concrete between the said strings of casing in the well, as more particularly set forth hereinabove, said unrestricted clause was dictated in said contract; that said contract should be corrected and reformed so as to reflect the true intent and understanding of the parties relative thereto."

The rule of law is:

"In a purely equitable action, the presumption is in favor of the finding of the trial court, but this court will consider the whole record and weigh the evidence; such findings as are not clearly against the weight of the evidence will stand affirmed on appeal, but where other findings are clearly against the weight of the evidence, this court will enter or cause to be entered such findings as the trial court should have made." Douglas v. Douglas, 176 Okla. 378, 56 P.2d 362.

Harvey, defendant's agent, had had many years' oil field experience. He testified that the concrete block was a "very unusual" construction, the first of its type he had ever seen; that when inspecting the well he asked plaintiff if the casings were cemented together, to which plaintiff replied that he did not think so, because he had been told the spaces were bridged with gunny sacks before the concrete was poured. On cross-examination Harvey testified that he told Madvine all the facts and information con-

cerning the well that were given him by plaintiff.

The testimony of Madvine and his attorney, who prepared the cross-petition, that the concrete slab was not mentioned at the conference between himself, Harvey, plaintiff, and defendant's attorney is interesting in the light of the allegations of the cross-petition above to the effect that plaintiff represented that no concrete was between the casings and that defendant had relied thereon.

The testimony of Madvine and his attorney set out above not only refutes the allegation of the cross-petition, supra, but, if taken as true, establishes that the presence of concrete was never discussed by the parties and no agreement concerning it was had.

The general rule is stated in 53 C. J. 925, as follows:

"* * * There must have been an agreement. a valid agreement sufficiently expressing the real intent of the parties, which the written instrument when reformed, will express. If no contract was ever made concerning the matter about which a mistake is claimed, there can be no reformation. * * *"

In Douglas v. Douglas, 176 Okla. 378, 56 P.2d 362, syllabus 9, it was said:

"Relief, by way of reformation of written instruments which may be had under proper circumstances in a court of equity, is limited to making the writing speak the former agreement of the parties, and the court cannot make a new or different contract for the parties."

Pomeroy, Equity Juris, vol. 3, sec. 137, cited by defendant, states:

"* * * Equity has jurisdiction to reform a written instrument, first, 'Where there is a mutual mistake. that is, where there has been a meeting of the minds, an agreement actually entered into. * * *'"

The testimony of Harvey, supra, to the effect he gave Madvine all the information plaintiff had given him is corroborated by plaintiff, who testified the question of concrete was discussed at the conference at which the contract was drawn and that he refused to guarantee the casings were not cemented together. By this testimony it is shown that the agent of defendant had notice of the unusual condition. No provision was placed in the contract concerning it. Where a party relies for reformation of a written instrument on the ground of mutual mistake, it must be such mistake as he could not by reasonable diligence get knowledge of when he was put on inquiry. Green v. Cox Machinery Co., 116 Okla. 255, 244 P. 414.

After an examination of the whole record, we conclude that the judgment should be, and the same is hereby, affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and PHELPS and CORN, JJ., concur.