**CRABB et al. v. CHISUM et al.**

No. 27634.    June 14, 1938.

A. J. Welch, for plaintiffs in error.

Abernathy & Howell, for defendants in error.

HURST, J. This is an action to reform two promissory notes, to recover judgment thereon as reformed, and to foreclose the real estate mortgage securing them. The trial court granted the relief prayed for, and defendants appeal. The facts are as follows:

Plaintiffs, residing in Oklahoma City, contracted by letter with defendants, who reside in Clinton, Okla., for the sale of certain real estate. Defendants were to pay $4,500; $1,500 to be in cash and the balance to be evidenced by three notes in the sum of $1,000 each, with interest at the rate of 7 per cent. per annum from date. Plaintiffs prepared the papers as aforesaid and transmitted same to defendants, who returned only two of the notes, altering the dates thereon. a new mortgage and $2.500 in cash. Plaintiffs, being dissatisfied with the alterations, went to the bank in Oklahoma City which was handling. the transaction for them and there had a stenographer employed by the bank prepare two new notes and a mortgage, which were transmitted to and signed by defendants. The evidence

clearly establishes the fact that plaintiffs directed the stenographer to prepare the new notes as the original notes had been prepared, with the exception of the dates. The original notes bore interest from date, but, due to oversight, the stenographer prepared the new notes so as to draw interest from maturity. This discrepancy was not discovered by plaintiffs until a year later, when their demands for interest payment were refused by defendants. Thereupon plaintiffs brought this action seeking to have the notes reformed so as to provide for interest from date, and predicating the action therefor on the ground of mutual mistake.

Defendants' first contention is that the petition does not state a cause of action for reformation, and that therefore the trial court erred in overruling their demurrer thereto. The petition alleged what the true agreement was between the parties; that "by a mutual mistake of the parties, said notes were so drawn so that same provided for interest only from date of maturity, when in truth it was the agreement and intention of the parties that said notes should bear interest from date same were executed until paid, said mistake resulting from an error on the part of the scrivener who prepared said notes * * *"; that plaintiffs did not discover the error until after the first payment of interest fell due; that "they (plaintiffs) are without fault in the premises in that said mutual mistake was not due to their negligence or carelessness, but rather the negligence of the scrivener who prepared said notices. * * *"

(a) Defendants contend first that the foregoing allegations are only conclusions of the pleader and do not contain a statement of facts showing that plaintiffs were free from negligence. In support of this proposition, the cases of Cherokee Oil & Gas Co. v. Lucky Leaf Oil Co. (1926) 116 Okla. 121, 242 P. 214; Green v. Cox Machinery Co. (1926) 116 Okla. 255. 244 P. 414, and Allen v. Bates (1928) 135 Okla. 255, 274 P. 1079, are cited.

In the Cherokee Co. Case, supra, the party seeking reformation had signed the instrument sought to be corrected and alleged what it contended was the true agreement and then prayed for reformation. No facts whatever were alleged disclosing how the error occurred or that it was free of negligence in signing the written agreement. The court held that no cause of action for reformation was stated. This case, however, does not govern here because plaintiffs specifically alleged a state of facts which, if true, showed how the error occurred and that they were not so negligent in the premises as to bar the relief prayed. The allegation that the error was occasioned by the negligence and mistake of the scrivener sufficiently distinguishes the present case from the cited case.

The Green and Allen Cases, supra, were cases wherein the party seeking reformation relied on the representations of the other party to the contract as to what was contained therein. The ground upon which reformation was sought was fraud. In both of said cases the court held that those allegations did not constitute fraud. Such circumstances were also held to affirmatively disclose "culpable negligence" on the part of the party signing the contract so as to bar equitable relief on account of mistake. But this does not mean that a party applying for equitable relief from mistake must be absolutely free from negligence. To impose such a requirement would in effect nullify the doctrine of reformation, since in practically every instance where an error in an instrument appears, it is accompanied with some degree of negligence. The rule laid down in the Green and Allen Cases, supra, denies relief only where the facts disclose "culpable negligence." But each case must be determined on the basis of the facts involved therein so far as the question of the degree of negligence which would bar relief is concerned. 2 Pomeroy on Equity Jurisprudence (3d Ed.) sec. 856, states the rule thus:

"As a second requisite, it has sometimes been said in very general terms that a mistake resulting from the complaining party's own negligence will never be relieved This proposition is not sustained by the authorities. It would be more accurate to say that where the mistake is wholly caused by want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of legal duty, a court of equity will not interpose its relief; but even with this more guarded mode of statement, each instance of negligence must depend to a great extent upon its own circumstances. It is not every negligence that will stay the hand of the court. The conclusion from the best authorities seems to be that the neglect must amount to the violation of a positive legal duty. The highest possible care is not demanded. Even a clearly established negligence may not of itself be a sufficient ground for refusing relief. if it appears that the other party has not been prejudiced thereby."

In Steele v. Kluter (1927, Iowa) 214 N. W. 522, it was stated:

"Generally speaking, it can be said that some degree of negligence enters into all cases where a writing signed by the parties, fails to express their real intention. * * * But even negligence may have its mitigations, and failure to discover is not always inexcusable in equity; and this is especially so as between the original parties to the transaction."

See, also, Conrad v. Farmers Mutual Hail Ins. Ass'n of Iowa (1937, Iowa) 273 N. W. 913, and the annotation in 45 A. L. R. 700.

In the instant case, the facts alleged disclose that plaintiffs' negligence consisted of failing to read the notes after they were prepared by the scrivener and before they were transmitted to the defendants, who signed the same. Such negligence is not, in our opinion, gross nor culpable, but is slight and excusable under the circumstances. This for the reason that the agreement as to the true rate of interest was settled and the minds of the parties had met thereon. There was as much duty on the part of the defendants under such circumstances to see that the instruments expressed the true agreement as there was on the plaintiffs. If defendants saw the error and signed the notes in disregard thereof, they can claim no prejudice by plaintiffs' error. If they signed the notes in ignorance of the error, then certainly a mutual mistake existed for which reformation will lie. We therefore hold that the petition stated a cause of action for reformation and was not fatally defective because some negligence on the part of plaintiffs may have appeared therefrom.

(b) Defendants next contend that no cause of action for reformation was stated because the petition discloses affirmatively only a unilateral, and not a mutual, mistake, in that the error was occasioned by the inadvertence or oversight of the scrivener employed by plaintiffs. It is contended in this connection that there is no allegation in the petition that the scrivener was acting as the agent of both parties.

This contention was decided adversely to the contention of defendants in the case of Ambrose v. Province (1930) 150 Okla. 120, 300 P. 758, wherein it was held that where reformation is sought to correct the mistake of a draftsman, and not to reform the agreement itself, it is not necessary to allege that the mistake was mutual. The theory underlying this rule is that if by the mistake of the scrivener or of either party, no matter how it occurred, the writing does not express the agreement actually made, it may be reformed by the court.

See, also, the case of McCaskill v. Toole (1928, Ala.) 119 So. 214.

■ Defendants' next contentions may be summarized as follows: (a) The evidence discloses that the minds did not meet upon an agreement to pay interest upon the two notes from date; and (b) if such were plaintiffs' understanding, the same was a unilateral, and not a mutual, mistake, and was the result of plaintiffs' gross negligence.

We cannot agree that the evidence does not disclose that the parties had agreed that the notes should bear interest from date rather than from maturity, nor can we agree that the evidence discloses a subsequent change of such agreement. Plaintiffs' letter offering to sell the property, which was accepted by the defendants, provided that the notes were to be made payable on or before maturity and were to bear interest at the rate of 7 per cent. "payable annually." Pursuant to this agreement, the first notes were executed so as to draw interest from date and were signed by defendants.

The evidence further clearly discloses that the error in the second notes, which are involved in this action, was made by the oversight of the scrivener in reducing same to writing. After these latter notes were transmitted to defendants with the provision that interest was payable from maturity, the witness Darnell testified that one of the defendants said that he knew the notes mistakenly provided for interest from maturity, but that since they were prepared by plaintiffs, the mistake was theirs and not his. While the testimony of the witness Poindexter indicates that the parties had intended to provide for the interest to run from maturity, the trial court, which had the witnesses before it and had an opportunity to observe their demeanor and to determine their credibility, decided this issue favorably to the plaintiffs. An examination of the record shows that the requirement in this class of cases that the proof must be clear, unequivocal, and decisive is satisfied. Cantrell v. O'Neill (1924) 109 Okla. 238, 235 P. 232; Whittaker v. White (1934) 169 Okla. 336, 37 P.2d 247; and Higgins v. Classen (1936) 176 Okla. 233, 55 P.2d 101.

We have already disposed of defendants' contention that the mistake involved in this case was unilateral and caused by plaintiffs' negligence. The fact that the trial court

held that plaintiffs were not free from negligence and denied them an attorney's fee as well as taxing half the costs against them does not require a reversal of this case. It is to be noted that the trial court granted reformation despite its finding that plaintiffs were negligent. Such holding is in accord with our view of the case, since the trial court evidently concluded that plaintiffs' negligence was not so culpable and gross as to bar equitable relief. The question of the costs and the denial of an attorney's fee is not before us, since plaintiffs did not appeal therefrom.

Defendants further contend that plaintiffs are estopped to ask reformation, since they have accepted the benefits under the present notes, and defendants would suffer a detriment if they were forced to pay more for the lots than they agreed to pay. This argument is without merit. Defendants are not required to pay more for the lots than they agreed to pay, since the original contract called for interest at the rate of 7 per cent. from date. To apply estoppel to plaintiffs here would permit defendants to profit thereby. In Noble v. Johnson (1930) 145 Okla. 46, 291 P. 26, it was said that:

"The doctrine of estoppel is not intended to work a positive gain to a party; its office is to protect a party from a loss which, but for the estoppel, he could not escape."

Judgment affirmed.

BAYLESS, V. C. J., and PHELPS, CORN, and GIBSON, JJ., concur.