STILLWATER NATIONAL BANK AND TRUST COMPANY, Stillwater, Oklahoma, a national banking corporation, Plaintiff,

v.

Veldon WOOLLEY a/k/a Veldon L. Woolley a/k/a Veldon Wooley, individually and d/b/a the Kaleidoscope, Defendant/Appellee,

Diana Sue Woolley a/k/a Diana Sue Wooley a/k/a Diana Woolley a/k/a Diana S. Woolley; Eldred M. Harmon, individually and d/b/a the Kaleidoscope; Rosalie Harmon a/k/a Rosalie H. Harmon; James B. Whiting a/k/a James R. Whiting, individually and d/b/a the Kaleidoscope; Robert F. Ahrberg a/k/a Robert Fred Ahrberg; the Federal Deposit Insurance Corp., individually and as receiver for the Securi-

ty State Bank of Mooreland, Oklahoma; the State of Oklahoma ex rel. the Oklahoma Employment Security Commission; the State of Oklahoma ex rel. the Oklahoma Tax Commission; the United States of America By and Through the Internal Revenue Service; the United States of America, By and Through the Small Business Administration; and the Board of County Commissioners of Payne County, State of Oklahoma, Defendants,

Salt Fork Development Corporation, Intervenor/Appellant,

Verlin Wooley and Shirley Wooley, husband and wife, Third–Party Defendants/Appellees.

No. 72809.

Court of Appeals of Oklahoma, Division No. 2.

Aug. 27, 1991.

Rehearing Denied Sept. 23, 1991.

Certiorari Denied Jan. 23, 1992.

Larry L. Bays, Alva, for third-party defendants/appellees.

William J. Baker, Hert, Baker & Kistler, Stillwater, for intervenor/appellant.

BRIGHTMIRE, Judge.

The dispositive issue here is whether a court of equity may—at the request of the purchaser of property at a sheriff's sale—reform a sheriff's deed to include property which was not expressly included in the foreclosed mortgage or mentioned in the sheriff's advertisement of the property. We hold that it may not and affirm the order of the trial court.

## I

On September 7, 1978, appellee Veldon Woolley, together with other individuals, secured a commercial loan for $150,000 from the Stillwater National Bank and Trust Company. The loan proceeds were to be used in the construction of a night-club to be known as "The Kaleidoscope." As security for the repayment of the loan, Woolley and the other borrowers executed and delivered to the bank a real estate mortgage to a certain five-acre tract located in Payne County, Oklahoma. The property pledged was legally described in the mortgage as:

"East Half of Northeast Quarter of Northwest Quarter of Northeast Quarter (E/2NE/4NW/4NE/4) of Section Fifteen (15), Township Twenty (20) North, Range Two (2) East of Indian Meridian, Payne County, Oklahoma, Containing Five (5) acres more or less."

On November 5, 1980, Woolley and one Eldred M. Harmon, borrowed $126,260 from the Security State Bank of Mooreland, Oklahoma. The loan proceeds were used to pave the Kaleidoscope parking lot. To secure repayment, Woolley and Harmon executed and delivered a real estate mortgage to an eighty-acre tract, which included the five acres subject to the Stillwater National Bank mortgage. This property was described in the Security State Bank mortgage as:

"[T]he North Half of the Northeast Quarter (N½NE¼) of Section Fifteen (15), Township Twenty (20) North, Range Two (2) East of the Indian Meridian, containing 80 acres more or less."

Woolley and the other mortgagors subsequently defaulted on their loans and foreclosure proceedings were instituted. On January 19, 1984, Stillwater National Bank and the Federal Deposit Insurance Corporation, as liquidating agent and receiver of Security State Bank, were awarded judgments against the mortgagors. The trial court ordered that the mortgaged premises be sold at sheriff's sale.

The five-acre tract was noticed for sale, and on May 1, 1984, John Pounds, as agent for Salt Fork Development Corporation, was the high bidder at $225,000. The sale was subsequently confirmed on May 17, 1984, and the sheriff executed and delivered a deed to the five acres to Salt Fork.

On March 22, 1985, Salt Fork filed a petition to intervene in the foreclosure ac-

tion seeking to reform the sheriff's deed to include that portion of the Kaleidoscope's parking lot which extended beyond the boundaries of the five-acre tract mortgaged to Stillwater National Bank. Salt Fork alleged in its petition that:

"[B]y reason of the mutual mistake of fact on the part of all parties to the said Mortgage, and ... the representations made by the Defendants during the course of the foreclosure proceedings ... it is now necessary to reform the ... Mortgage and Sheriff's Deed and each of them, to reflect the true description of the five (5) acre tract which fully encompasses all of the buildings and improvements which are a part of the Kaleidoscope."

The appellees filed a motion for summary judgment. Salt Fork objected to the motion claiming that there existed substantial controversy as to material facts, or in the alternative, that it was entitled to judgment as a matter of law.

On January 13, 1989, the trial court entered an order granting the appellees' motion for summary judgment. The trial court subsequently denied Salt Fork's motion for new trial and made the following findings of fact and conclusions of law:

"1. The title taken by [Salt Fork] at the foreclosure sale relates back to the title of [Stillwater National Bank] as such title was originally conveyed by [Woolley];

2. That there is no issue as to the regularity of the foreclosure proceedings;

3. The Defendants Wooley [*sic*] were to use the proceeds of the Plaintiff, Stillwater National Banks' loan to construct a club known as the Kaleidoscope, and that at the time of construction a gravel parking lot was contemplated and later constructed by said defendants;

4. Said Defendants later determined to pave the parking lot and a Note and Mortgage covering an 80 acre tract of land, including the five acre tract of land in question, were executed in favor of another Mortgagee, Security National Bank of Mooreland, Oklahoma, and the proceeds of that loan were used for the purpose of paving said parking lot;

5. It is undisputed that portions of the parking lot extend beyond the boundaries described in the Mortgage granted in favor of the Plaintiff, Stillwater National Bank;

6. That based upon the above and foregoing, there is no dispute regarding the issue of mutual mistake or fraud by the Defendants Wooley [*sic*] and mistake by the Plaintiff, Stillwater National Bank abd Trust Company."

From this adverse ruling Salt Fork appeals.

## II

While courts of equity have jurisdiction to reform written instruments, they are wont to exercise it with utmost caution. In general, the equitable power of reformation is limited to correcting a written instrument to reflect that which the signatories had actually agreed to. Equity will not create a new or different contract for the parties. *Dennis v. American–First Title & Trust Co.*, 405 P.2d 993 (Okl.1965); *Tuloma Pipe & Supply Co. v. Townsend*, 182 Okl. 321, 77 P.2d 535 (1938).

Salt Fork contends that there are disputed issues of fact concerning a mutual mistake on the part of Stillwater National Bank and Woolley; a unilateral mistake on the part of the bank; and fraud committed by Woolley with regard to the legal description contained in the Stillwater National Bank mortgage. For this reason, Salt Fork says that Woolley is not entitled to a summary judgment.

Assuming such issues exist, they do not reach or affect the pivotal or dispositive legal issue which is this: Whether equity will reform the description of property set out in a sheriff's deed issued to a purchaser at a foreclosure sale when the description in the deed agrees with that in the bank's mortgage. We hold it will not.

In *Trachtenberg v. Glen Alden Coal Co.*, 354 Pa. 521, 47 A.2d 820 (1946), the Pennsylvania Supreme Court addressed this issue. In denying the purchaser's re-

quest to reform a sheriff's deed to correct a mutual mistake which failed to include two lots in a mortgage instrument, the *Trachtenberg* court cited three reasons why it would be inequitable to allow the reformation of the sheriff's deed:

> "First, it would be unfair to the mortgage debtor. He is entitled to have the entire property of which he is to be divested advertised for sale so that it will bring a price higher than will the mere portion advertised for sale. Second, the judgment creditor is entitled to have the entire property which he claims is covered by the mortgage advertised and sold to the end that a higher price may be obtained from the successful bidder.... Third, the public is entitled to be correctly informed by advertisement of the size and nature i.e. of the exact identity, of the property to be sold at the sheriff's sale so that possible purchasers may bid with exact information as to what they are bidding on. That there should be no concealment or misrepresentation, intentional or otherwise, of a fact which if known would affect bidding at a public sale conducted by an official representative of the Commonwealth is incontestable."

*Trachtenberg,* 47 A.2d at 824.

Other jurisdictions have also declined to reform legal descriptions to enlarge the quantity of land conveyed by sheriffs' deeds. *See Stephenson v. Harris,* 131 Ala. 470, 31 So. 445 (1901); *Hull v. Calkins,* 137 Cal. 84, 69 P. 838 (1902); *Fisher v. Villamil,* 62 Fla. 472, 56 So. 559 (1911); *Alfalfa Lumber Co. v. Mudgett,* 199 S.W. 337 (Tex. Civ.App.1917); *Miller v. Kolb,* 47 Ind. 220 (1874); *Schwickerath v. Cooksey,* 53 Mo. 75 (1873); *Marks v. Taylor,* 23 Utah 470, 65 P. 203 (1901); *see also State v. Kahua Ranch, Ltd.,* 47 Haw. 28, 384 P.2d 581 (1963), *opinion adhered to,* 47 Haw. 466, 390 P.2d 737, *rehearing denied,* 47 Haw. 485, 391 P.2d 872 (1964).

Thus even where a mortgage misdescribes the property intended to be mortgaged, the mistake is a matter to be corrected by a proper proceeding *before* judicial foreclosure. For if the mistake remains uncorrected in the decree of foreclosure, an action will not lie for the reformation of the deed after the sheriff's sale, its confirmation, and the execution of the deed to the purchaser. It would be unfair to other bidders and inequitable to the mortgagor to allow the purchaser to increase the size of the property purchased at the sheriff's sale. The purchaser here got exactly what he bid on.

### III

Since the material uncontroverted facts support the trial court's entry of summary judgment, it is affirmed. In view of this disposition it is unnecessary to address the other issues raised by the parties.

AFFIRMED.

RAPP, J., concurs.

MEANS, P.J., dissents.

MEANS, Presiding Judge, dissenting.

Intervenor Salt Fork Development Corporation appeals the order overruling its motion for new trial of a summary judgment in favor of Veldon Woolley, Verlin Woolley, and Shirley Woolley. Having reviewed the record and applicable law, I would reverse and remand.

The controversy in this case involves two parcels of property in Payne County. The first and primary tract is a five-acre strip described as the east half of the northeast quarter of the northwest quarter of the northeast quarter of section 15. The second is eighty acres in size and encompasses the entire north half of section 15, including the five-acre tract.

In 1978, Veldon Woolley joined with other mortgagors to mortgage the five-acre property in exchange for a $150,000 commercial loan from Stillwater National Bank. It is undisputed that the purpose of the loan was to construct a club called "The Kaleidoscope," and that, at the time the loan was made, construction plans called for a gravel parking lot for the club. The mortgagors subsequently mortgaged the entire eighty acres to the Security

State Bank of Mooreland in exchange for funding to pave the lot.

When the mortgagors defaulted, Stillwater National Bank obtained a judgment and order of foreclosure and sale of the five-acre tract. John Pounds, as agent for Salt Fork Development Corporation, purchased the property for $225,000. This sale was confirmed on May 17, 1984.

Subsequent to its purchase of the property, Salt Fork discovered that the parking lot as paved exceeded the bounds of the five-acre tract. In March 1985 Salt Fork filed a petition in intervention, seeking reformation of the sheriff's deed and underlying mortgage. It alleged that, because of mutual mistake or unilateral mistake and fraud, the mortgage description was erroneous, as it had been the intent of the parties to recite a security interest "in and to all of the improvements placed upon the above described property and or upon the Northwest Quarter (NW/4) of the Northeast Quarter (NE/4), pertaining to or in anyway [*sic*] connected with that certain business commonly known and operated under the name of 'Kaleidoscope,'" and that Veldon Woolley and his co-mortgagors had represented to Stillwater National that all of such improvements were located on the five-acre tract. Verlin and Shirley Woolley were named as owners of the surrounding eighty-acre parcel. In addition to reformation, Salt Fork sought injunctive relief against the three Woolleys from going upon the property in question or otherwise depriving Salt Fork of its rights to it.

Stillwater National admitted Salt Fork's allegations and joined in asserting that it was the intention of both the bank and Woolley to include "all of the property upon which the Kaleidoscope and any related improvements were located" within the mortgage description.

The Woolleys denied Salt Fork's petition, asserted various affirmative defenses, and filed cross-petitions seeking actual and punitive damages against Salt Fork arising from its use and possession of the property. They then moved for summary judgment on Salt Fork's claim, claiming as uncontroverted the following material facts:

(1) The real estate mortgage, Stillwater National Bank petition, notice of lis pendens, special execution and notice of sale, sheriff's notice of sale, proof of publication, order approving sale, and sheriff's deed all contained the same legal description of the mortgaged property; (2) in November 1978 Stillwater National had obtained a registered land survey showing a portion of the parking lot exceeding the boundaries of the mortgaged property; (3) Stillwater National never sought reformation of the mortgage so as to include the entire parking lot; (4) John Pounds conducted only a visual inspection of the property prior to purchase, and neither inquired about the property nor received any information regarding it at the foreclosure sale; (5) another Salt Fork agent, Robert M. Herlihy, received an independent appraisal of the property from a Stillwater realtor but conducted no further inspection of the property prior to sale; and (6) Salt Fork did not discover the misdescription until two months after the sale.

Salt Fork responded by producing evidence to show the following facts: (1) The Stillwater National loan was for the purpose of building the Kaleidoscope club, including its improvements; (2) Veldon Woolley did not intend to omit any portion of the improvements at the time he mortgaged the property; (3) at the time the lot was built, Veldon Woolley knew it exceeded the bounds of the mortgaged property and told Security State Bank but failed to advise Stillwater National; (4) Salt Fork did not become aware of the parking lot problem until July 1984; (5) the independent appraisal obtained by Herlihy showed one acre of paved parking; (6) Woolley made remarks to Herlihy indicating that Woolley did not know until 1984 that the lot exceeded the mortgaged boundaries; (7) according to the Stillwater National loan officer, Tom Bennett, both the bank and Woolley intended at the time the mortgage was executed that all improvements relating to the Kaleidoscope be included within the legal description upon which the mortgage was granted; (8) although Stillwater National obtained a survey of the property, it was done as a procedural matter and was

not reviewed; and (9) Stillwater National was not aware of the discrepancy until after the sheriff's deed had been issued to Salt Fork.

The trial court granted Woolleys' motion for summary judgment and denied Salt Fork's subsequent motion for new trial. It found that Salt Fork's title related back to that of Stillwater National; that the Woolleys were to use the loan to construct the Kaleidoscope; that at the time of construction, a gravel lot was contemplated; that the Woolleys later paved the lot with proceeds of a loan from Security State Bank, for which the eighty-acre lot was mortgaged; and that the parking lot extended beyond the boundaries described in the Stillwater National mortgage. The court concluded from this that "there is no dispute regarding the issue of mutual mistake or fraud by the Defendants Wooley [*sic*] and mistake by the Plaintiff, Stillwater National Bank and Trust Company." From this order, Salt Fork has appealed.

On review of a grant of summary judgment, this court will view all inferences and conclusions to be drawn from the underlying facts in the light most favorable to the party opposing the motion. *Rose v. Sapulpa Rural Water Co.*, 631 P.2d 752, 754 (Okla.1981). A motion for summary judgment may be sustained only if no question concerning any material fact remains to be determined. *Garner v. Johnson*, 609 P.2d 760, 762–63 (Okla.1980). However, the trial court's ruling must be made on the record which the parties have actually presented and not on a record which is potentially possible. *Northrip v. Montgomery Ward & Co.*, 529 P.2d 489, 494 (Okla.1974).

Where a written instrument does not accurately reflect the parties' agreement, it may be reformed by a court of equity. *Boettler v. Rothmire*, 442 P.2d 511, 514–15 (Okla.1968). Parol evidence is admissible in reformation cases based on mutual mistake, as the oral testimony is not offered to alter the parties' agreement but rather to show that the language memorializing that agreement is not accurate. *Fabbro v.*

*Reese*, 206 Okla. 655, 655–56, 246 P.2d 324, 325 (1952).

Addressing the issues raised by the parties in their briefs, I first find that the affidavit and deposition testimony presented by Salt Fork concerning the mutual intent of the parties and/or Woolley's knowledge of the lot boundaries at the time of the mortgage's execution raise controverted material facts sufficient to defeat summary judgment. Contrary to Woolleys' contentions, Salt Fork, as the party opposing summary judgment, was not required in its response to Woolleys' motion, to prove its case by clear and convincing evidence, but was only required to show that it would "be able at the time of trial to present competent, admissible evidence to support [its] allegations." *Davis v. Leitner*, 782 P.2d 924, 926 (Okla.1989).

Woolleys also contend that, even if Salt Fork could carry its burden of proof regarding mutual mistake, it is barred from recovery by Stillwater National's negligence in failing to inspect the post-mortgage survey. " '[N]egligence is not in itself a defense, else there would be no ground for reformation for mistake, as mistakes nearly always presuppose negligence.' " *Home Stake Prod. Co. v. Trustees of Iowa College*, 331 F.2d 919, 921 (10th Cir.1964) (quoting *Columbian Nat'l Life Ins. Co. v. Black*, 35 F.2d 571, 575 (10th Cir.1929)). While negligence of a party seeking to reform a written agreement may bar equitable relief, this does not demand the highest possible care; rather, the neglect must amount to the violation of a positive legal duty. 15 O.S.1981 § 63; *Crabb v. Chisum*, 183 Okla. 138, 139–40, 80 P.2d 653, 655 (1938). Such negligence is an issue of fact to be determined by the trial court. *Id.*

Further, for this doctrine to apply, the negligence complained of must relate to a party's *entry* into an erroneous agreement. Negligence occurring after the execution of the document would not bar invocation of mutual mistake, but rather would relate to a statute of limitations or laches argument. Woolleys have offered no evidence showing that, at the time the mortgage

was executed, Stillwater National was negligent in accepting the mortgagors' description of the property as encompassing the entirety of the planned construction and improvements.

Woolleys further rely on the doctrine of caveat emptor to make the related argument that Salt Fork was negligent in its inspection of the property, failing to discover the alleged misdescription prior to purchase. The doctrine of caveat emptor, however, relates to inspection of the chain of title in order to ascertain the seller's true interest in the property. Such an inspection would not have revealed the flaw of which Salt Fork and Stillwater National now complain. The failure to have a survey made prior to purchase does not constitute negligence as a matter of law so as to bar reformation. *See, e.g., Leimkuehler v. Shoemaker*, 329 S.W.2d 726 (Mo.1959); *see generally* 66 Am.Jur.2d *Reformation of Instruments* § 87 (1973).

Finally, Woolleys' argument that lack of privity bars Salt Fork's right to reformation is without merit. The purchaser of land at a foreclosure sale may have errors in his deed and in the underlying mortgage corrected by reformation. 66 Am.Jur.2d *Reformation of Instruments* § 61 (1973); 55 Am.Jur.2d *Mortgages* § 847 (1971).

I disagree with the majority's conclusion that, as a blanket proposition of law, a sheriff's deed is impervious to equitable reformation. First, taking Salt Fork's allegations as true, both parties to the mortgage continued under the mistaken impression that the mortgage, foreclosure petition, and sheriff's deed included the entire Kaleidoscope parking lot and not just the portion actually described. However, they did not object to the amount ultimately appraised as the fair market value of what they mistakenly thought was the entire Kaleidoscope tract. Second, where, as here, the misdescription was allegedly the product of fraud on the part of the mortgagor, it is difficult to see the inequity in divesting him of the actual property which he led the mortgagee to believe secured the loan proceeds. Third, as discussed above, it is possible that none of the parties were

negligent or breached a legal duty in failing to discover the misdescription prior to the sheriff's sale; it is again difficult to see the equity in barring them from a remedy prior to their discovery of the problem. A more equitable solution to the issue raised by the majority would be for the trial court to reform the underlying mortgage and then either order a new foreclosure and sale or allow the trial court to determine whether, in equity, a new foreclosure and sale is warranted. There is ample authority for such an approach. *See, e.g.,* Annotation, *Right, After Foreclosure, to Reformation on Ground of Erroneous Description Originating in Mortgage*, 172 A.L.R. 655 (1948), and cases cited therein.

I would therefore find that the trial court erred in determining that the issues of mistake or fraud by Woolleys and mistake by Stillwater National were undisputed and in determining that Woolleys were entitled to summary judgment against Salt Fork. As the judgment was erroneously granted, I would reverse the order overruling Salt Fork's motion for new trial and remand the case to the trial court.