**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

AMY MONROE, a/k/a Amy L.
McCafferty; C. MARCUS
MCCAFFERTY,

      Plaintiffs - Appellants,

v.

BANK OF AMERICA CORPORATION,
f/k/a Bank of America, N.A.;
WILMINGTON SAVINGS FUND
SOCIETY, FSB, doing business as
Christiana Trust, not in its individual
capacity, but soley as trustee for BCAT
2015-14BTT,

      Defendants - Appellees.

No. 18-5089
(D.C. No. 4:17-CV-00248-JED-JFJ)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **McKAY**, and **LUCERO**, Circuit Judges.
_____

Amy Monroe (also known as Amy L. McCafferty) and C. Marcus McCafferty

(collectively, "the McCaffertys") allegedly defaulted on a promissory note secured by

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

a mortgage on their home. The original holder of those instruments was Bank of America Corporation (formerly known as Bank of America, N.A. or "BANA"). BANA ultimately assigned its rights to Wilmington Savings Fund Society, FSB ("Wilmington"). After BANA and Wilmington initiated separate foreclosure actions that were dismissed without prejudice, the McCaffertys filed this declaratory judgment action to challenge the enforceability of the note and mortgage. The district court dismissed most of their claims under Federal Rule of Civil Procedure 12(b)(6) and granted summary judgment to Wilmington on the remaining claim under Federal Rule of Civil Procedure 56(f). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

In 2006, the McCaffertys borrowed $175,000 from BANA. Ms. McCafferty executed a promissory note, which was secured by a duly recorded mortgage that the McCaffertys jointly executed on their real property located at 1616 South Owasso Avenue in Tulsa, Oklahoma. The promissory note and the mortgage cross reference each other. The McCaffertys apparently stopped making payments in 2010, causing the loan to go into default and precipitating a series of foreclosure actions against them in state court.

BANA filed the initial foreclosure action in March 2011 (the "2011 action"). It invoked its option to accelerate the total payment due upon default and demanded $174,996.31, together with accrued interest and applicable fees. For reasons that are

2

not evident from the record, the 2011 action was dismissed without prejudice in late 2012.

In September 2015, BANA assigned all of its interest in the note and mortgage to Wilmington. The record is silent as to whether the McCaffertys were aware of the assignment, which was recorded with the county clerk in October 2015. In June 2016, the McCaffertys' counsel sent a letter to BANA's agent, demanding that BANA release the mortgage. The next week, Wilmington filed its own foreclosure action against the McCaffertys ("the 2016 action"). The 2016 action was dismissed without prejudice in January 2017, this time for failure to serve process.

The McCaffertys filed this lawsuit in state court in April 2017, asserting three claims: (1) a declaratory judgment that the mortgage is unenforceable because of an error in the property description; (2) a declaratory judgment that the promissory note and mortgage are unenforceable because the statute of limitations has passed; and (3) slander of title based on the filing of the 2016 action and the defendants' refusal to release the mortgage. After BANA removed the case to federal court, the defendants moved to dismiss all claims under Rule 12(b)(6). In the meantime, Wilmington filed its second foreclosure action against the McCaffertys in state court in December 2017 ("the 2017 action").[1]

---

[1] Based on our review of the docket in Tulsa County District Court, we take judicial notice that the 2017 action, No. CJ-2017-4987, is currently stayed pending this appeal. *See Estate of McMorris v. Comm'r*, 243 F.3d 1254, 1259 n.8 (10th Cir. 2001) (explaining that we can take judicial notice of documents and docket materials filed in other courts).

In March 2018, the federal district court dismissed the first and second claims against BANA, finding that BANA had no continuing interest in the enforceability of the note or mortgage after it assigned the instruments to Wilmington. It also dismissed the first claim against Wilmington on the ground that an erroneous property description does not necessarily invalidate a mortgage under Oklahoma law. The rest of the claims survived, at least for the time being. The district court denied the motion to dismiss the second claim against Wilmington, rejecting the notion that the statute of limitations began to run after the last missed installment payment and finding instead that the limitations period began to run in 2011, when BANA accelerated the due date for the entire balance. The district court reserved its ruling on the third claim against both defendants pending supplemental briefing on the applicable statute of limitations: the six-year statute of limitations for promissory notes codified at Okla. Stat. tit. 12A, § 3-118(a); or the five-year statute of limitations for actions upon a contract codified at Okla. Stat. tit. 12, § 95(A)(1). In a follow-up order issued in April 2018, the district court dismissed the slander of title claim, holding that the McCaffertys could not satisfy the elements as a matter of law. Within this context, the district court resolved the statute of limitations question, concluding that the six-year statute of limitations in § 3-118(a) applies to both the note and mortgage in this case.

Only one claim remained: the second declaratory judgment claim against Wilmington based upon the expiration of the statute of limitations. In May 2018, the district court ordered Wilmington to show cause why summary judgment should not

be entered in the McCaffertys' favor given its ruling that a six-year statute of limitations began to run in March 2011. Wilmington responded that it had one year from the dismissal of the 2016 action (not the dismissal of the 2011 action) to re-file a foreclosure action against the McCaffertys under Okla. Stat. tit. 12, § 100, Oklahoma's savings statute, and it had done just that. It provided evidence that it filed the 2017 action on December 18, 2017. The district court agreed with Wilmington's position. In an order issued in July 2018, it held that the 2017 action is not barred by the six-year statute of limitations because it falls within the savings statute; therefore, Wilmington prevailed on the remaining claim as a matter of law under Rule 56(f).

The McCaffertys filed this timely appeal. They argue that the district court erred in granting summary judgment in Wilmington's favor on the declaratory judgment claims because (1) the six-year statute of limitations in Oka. Stat. tit. 12A, § 3-118(a) does not apply to mortgage foreclosure actions in Oklahoma; and (2) the mortgage was fatally defective. They do not challenge the dismissal of the claims against BANA[2] or the dismissal of their slander of title claim.

---

[2] The notice of appeal specifies that the McCaffertys are appealing from the judgment entered on July 31, 2018, which was entered in Wilmington's favor. To protect its interests, BANA filed a response brief, asking this court to affirm the dismissal of the claims against it. The McCaffertys do not address their claims against BANA in their opening or reply briefs or otherwise acknowledge BANA's response brief. Therefore, to the extent (if any) they challenge the dismissal of the claims against BANA, we affirm the district court's judgment in BANA's favor. *See* Fed. R. App. P. 28(a)(8)(A) (stating that an appellant's opening brief must identify "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); *see also Lenox MacLaren*

5

## ANALYSIS

### I.      Standard of Review

We review the grant of summary judgment de novo, applying the same standard the district court applied. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). Summary judgment must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, "[w]e must view facts in the light most favorable to the non-moving part[y]" and "resolv[e] all factual disputes and reasonable inferences in [the non-moving party's] favor." *Cillo*, 739 F.3d at 461 (internal quotation marks omitted).

### II.      Statute of Limitations

To assess the district court's summary judgment ruling on the enforceability of the note and mortgage, we must determine whether a five- or six-year statute of limitations applies to mortgage foreclosure actions in Oklahoma. We must then apply that statute of limitations to the facts at hand, considering the date on which the limitations period was triggered and the extra time conferred by Oklahoma's savings statute.

---

*Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1122 n.7 (10th Cir. 2014) (explaining that issues that are not adequately briefed will not be considered on appeal).

**A.** **A six-year statute of limitations applies to mortgage foreclosure actions under Okla. Stat. tit. 12A, § 3-118(a).**

The central issue on appeal is which statute of limitations applies to mortgage foreclosure actions in Oklahoma. The McCaffertys argue it is five years, citing Okla. Stat. tit. 12, § 95(A), which delineates the limitations period for "[c]ivil actions other than for the recovery of real property."[3] They rely on § 95(A)(1), which states that "[a]n action upon any contract, agreement, or promise in writing" must be filed within five years. By contrast, Wilmington argues it is six years, citing Okla. Stat. tit. 12A, § 3-118(a). Excepting circumstances not relevant here, that provision states that "an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six (6) years after the due date or dates stated in the note or, if a due date is accelerated, within six (6) years after the accelerated due date."[4] *Id.*

As a preliminary matter, we note that it is difficult for us to evaluate what arguments were properly preserved for appellate review for this issue and its subparts

---

[3] Neither party acknowledges the exclusion of actions "for the recovery of real property" from § 95(A) or discusses whether that phrase includes mortgage foreclosure actions, nor could we find any case law answering this question. Accordingly, we will not base our ruling on this exclusion.

[4] The Oklahoma Comments to § 3-118 explain that "[t]his is a new Section, introduced as part of the 1992 UCC revisions to gain greater uniformity than was present when the statute of limitations issue was left to other local law (*e.g.*, in Oklahoma, 12 Okla. Stat. § 95 . . . )." § 3-118 cmt. 1. They further explain that "[f]or the most part, the limitations period will be longer under Section 3-118: 6 years, rather than 5 years under 12 Okla. Stat. § 95 (First) (1992)." § 3-118 cmt. 1; *see also Lenders Collection Corp. v. Harris*, 900 P.2d 1022, 1024 (Okla. Civ. App. 1995) ("[A]lthough § 95 was not repealed, to the extent it conflicts with § 3-118(a) in

because the McCaffertys' appendix is incomplete.  *See Burnett v. Sw. Bell Tel., L.P.*, 555 F.3d 906, 908 (10th Cir. 2009).  An appellant who is represented by retained counsel has the duty to file an appendix that serves as the record on appeal.  *See* 10th Cir. R. 10.1.  The appendix must be "sufficient for considering and deciding the issues on appeal."  *Id.* 30.1(B)(1).  Yet the McCaffertys did not include the supplemental briefs on the applicable statute of limitations or the briefs in response to the show-cause order directed to Wilmington that were filed in the district court. This court generally is "not inclined to consider reversing the district court based upon the parties' tacit assurances that we have before us all of the relevant matter." *Burnett*, 555 F.3d at 910.  "[A]n appellant who provides an inadequate record does so at his peril."  *Id.* at 908 (internal quotation marks omitted); *see also Rios v. Bigler*, 67 F.3d 1543, 1553 (10th Cir. 1995) ("It is not this court's burden to hunt down the pertinent materials.  Rather, it is Plaintiff's responsibility as the appellant to provide us with a proper record on appeal.").  In the interest of justice, however, we have reviewed the filings in the district court to ensure that the parties' arguments were adequately preserved for appellate review.

Turning to the merits, case law on this statute of limitations question is admittedly scant.  The Oklahoma Supreme Court has not considered it, and one division of the Oklahoma Court of Civil Appeals treated it as an open question in

---

suits on promissory notes, § 3-118(a) will control because it is the more specific of the two statutes.").

*Wells Fargo Bank, N.A. v. Kindle*, 332 P.3d 302, 307 n.6 (Okla. Civ. App. 2014).[5]

Two other divisions have applied a six-year statute of limitations to a mortgage foreclosure action based on a promissory note without analyzing or rejecting the contrary position that the McCaffertys advance here. In *Bankers Trust Co. of California, N.A. v. Wallis*, 280 P.3d 974 (Okla. Civ. App. 2012), the court applied § 3-118(a) to a mortgage foreclosure action in which the lender accelerated the due date for the mortgage, where the mortgage secured a promissory note. *Id.* at 976 n.8 (finding that the foreclosure action was timely filed "within the six-year statute of limitations"). And in *Cinco Enterprises, Inc. v. Botts*, 931 P.2d 81 (Okla. Civ. App. 1996), the court held that the mortgagee's "right to enforce its mortgage was extinguished by the passage of six years after the promissory note became due." *Id.* at 83. Likewise, a bankruptcy court has applied Oklahoma's six-year statute of limitations to assess the timeliness of a foreclosure action within a Chapter 13 adversary proceeding. *See Soriano v. Wells Fargo Bank, N.A.* (*In re Soriano*), 587 B.R. 371, 385 n.10 (Bankr. W.D. Okla. 2018). For the reasons that follow, we

---

[5] The factual scenario in *Kindle* resembles this case in that the mortgagee bank filed a petition for foreclosure and sought a reformation of the legal description in the mortgage, and the parties debated the applicable statute of limitations and the effect of the note's acceleration on the timeliness of the action. The record was silent as to which statute of limitations the trial court applied to the foreclosure case, and the appellate court did not find it necessary to opine on any limitations issues because of its other rulings. *Kindle*, 332 P.3d at 307 n.6 ("[I]t is unnecessary to address the questions of which statute of limitations applies, [Okla. Stat. tit. 12, § 95(A)(1) or Okla. Stat. tit. 12A, § 3-118(a)], the effect of that application on [the bank's] claims, or the effect of the note's acceleration.").

9

agree with the latter courts' position and hold that the statute of limitations for mortgage foreclosure actions in Oklahoma is six years.

Our analysis begins with *Cinco*, the only case that provides any rationale for applying § 3-118(a) in the mortgage context. The lender in *Cinco* held a promissory note and a real estate mortgage that referred to the terms of the note and secured it. Nine years after the last maturing obligation evidenced by the promissory note became due, the lender filed a foreclosure action and the court had to decide whether it was time barred. *Cinco*, 931 P.2d at 82.

The court began by assessing whether Okla. Stat. tit. 46, § 301 is a statute of repose or a statute of limitations. *Id.* At that time, § 301 provided that "[n]o suit, action or proceeding to foreclose or otherwise enforce the remedies in any mortgage . . . [could] be had or maintained after the expiration of ten (10) years from the date the last maturing obligation secured by such mortgage . . . bec[ame] due as set out therein, and such mortgage . . . [ceased] to be a lien," unless the mortgage holder filed a written notice of extension. Okla. Stat. tit. 46, § 301(A) (1991).[6] The court concluded that § 301 is a statute of repose because the statute of repose for tort actions is similarly phrased and § 301's language "sets the outer boundary beyond which an action for foreclosure may be brought and allows no exceptions thereto." *Cinco*, 931 P.2d at 82. The foreclosure action fell within the then-ten-year statute of repose. *Id.* at 83.

---

[6] The expiration date later changed to seven years for foreclosure actions filed after November 1, 2001, like the 2017 action. *See* Okla. Stat. tit. 46, § 301(B).

10

The court then considered whether the foreclosure action was nonetheless time barred under § 3-118(a), which it explained was the applicable statute of limitations due to its interplay with Okla. Stat. tit. 42, §§ 5 & 23:

> § 3-118(a) provides a six-year statute of limitations for actions to enforce the obligations of a promissory note, while [Okla. Stat. tit. 42, § 23] provides that a lien is extinguished "by the mere lapse of the time within which, under the provisions of civil procedure, an action can be brought upon the principal obligation," and [§ 5] specifically provides that the provisions of Title 42 apply to mortgages. Thus, any action by Cinco to enforce the underlying obligation secured by the mortgage is time-barred, and Cinco's right to enforce its mortgage was extinguished by the passage of six years after the promissory note became due.

*Cinco*, 931 P.2d at 83.

In other words, the right to enforce a mortgage is subject to the same time constraints as the right to enforce a promissory note because Title 42, which governs liens, links their fate together. "A lien is a charge imposed upon specific property, by which it is made security for the performance of an act." Okla. Stat. tit. 42, § 1. And a mortgage is a type of lien by virtue of § 5, which states that "[c]ontracts of mortgage . . . are subject to all the provisions of this chapter." *Id.*, § 5. The enforceability of a mortgage is tied to the enforceability of a promissory note in that "[a] lien is to be deemed accessory to the act for the performance of which it is a security . . . and is extinguishable in like manner with any other accessory obligation." *Id.*, § 21. Thus, "[a] lien [, here, the mortgage,] is extinguished by the mere lapse of the time within which . . . an action can be brought upon the principal obligation [, here, the promissory note]." *Id.*, § 23; *accord Fourth Nat'l Bank of Tulsa v. Appleby*, 864 P.2d 827, 834 (Okla. 1993) ("When the statute of limitations

11

bars a debt, that bar serves to extinguish any lien securing the debt."); *Rice v. Burgess*, 254 P. 746, 747 (Okla. 1926) ("[T]he mortgage given to secure a note must stand or fall with the note, and if there is no debt that can be legally collected, the mortgage cannot be foreclosed.").

The reasoning in *Cinco* is consistent with how other Oklahoma statutes treat promissory notes and the mortgages that secure them as interconnected. For instance, the statute of repose for foreclosure actions, discussed *supra*, expressly ties the deadline to file a foreclosure action to the terms of the promissory note. Foreclosure actions cannot be maintained "after the expiration of seven (7) years from the date the last maturing obligation secured by such mortgage . . . becomes due . . . and such mortgage . . . shall cease to be a lien." Okla. Stat. tit. 46, § 301(B) (articulating the rule for actions filed after November 1, 2001). The statute addressing judgments in a foreclosure suit also ties the two together. *See* Okla. Stat. tit. 12, § 686 ("In actions to enforce a mortgage . . . , [a judgment] shall be rendered for the amount or amounts due . . . ."); *see also Bank of Okla., N.A. v. Red Arrow Marina Sales & Serv., Inc.*, 224 P.3d 685, 691 n.10 (Okla. 2009) ("In a foreclosure proceeding the single judgment is the court's determination of the amount due the creditor and its order that the encumbered property be sold to satisfy the mortgage lien.").

*Cinco*'s reasoning also aligns with how the Oklahoma Supreme Court has treated promissory notes and the mortgages that secure them. It has described a "judgment upon the note" as "a necessary predicate in foreclosing the lien upon the

12

real estate." *Rice*, 254 P. at 747. A "predicate act" is "[a]n act that must be completed before legal consequences can attach either to it or to another act or before further action can be taken." *Predicate Act*, Black's Law Dictionary (11th ed. 2019). Thus, it would not make sense chronologically for the statute of limitations for a foreclosure action to precede the one for an action on a promissory note. Indeed, the Oklahoma Supreme Court actually merged the note and mortgage together in its analysis when it spoke generally about "[t]he statute of limitations applicable to indebtedness evidenced by a promissory note, secured by a real estate mortgage" and stated that "the bar of the statute against the debt operates to extinguish the lien securing the same." *State ex rel. Land Office Comm'rs v. Hall*, 128 P.2d 838, 840 (Okla. 1942).

This interconnectedness is also evident from the Oklahoma Supreme Court's treatment of the promissory note as the controlling instrument and the mortgage as incidental. *See, e.g.*, *Gill v. First Nat'l Bank & Tr. Co. of Okla. City*, 159 P.2d 717, 719 (Okla. 1945) (stating that where a promissory note is secured by a mortgage, "we have always held that the note which evidences the debt due is the controlling factor"); *Ogilvie v. First Nat'l Bank*, 64 P.2d 875, 877 (Okla. 1937) (per curiam) ("The mortgage securing a note is merely incident and accessory to the note . . . ."); *accord* Okla. Stat. tit. 42, § 21 ("A lien is to be deemed accessory to the act for the performance of which it is a security . . . ."). Under this principle, a promissory note and a mortgage are so closely connected that if a note is assigned, the mortgage

13

securing it is as well, even without a formal assignment. *See Gill*, 159 P.2d at 719; *Ogilvie*, 64 P.2d at 877.

The promissory note and mortgage under consideration in this case are no exception: they frequently cross reference each other in a way that makes them inextricably connected. In the promissory note, for instance, Ms. McCafferty promises to pay BANA the credit advanced to her, finance charges, and costs and expenses for which she was responsible "under this Agreement or under the 'Mortgage' which secures [her] Credit Line." Aplt. App. at 23. She also authorizes BANA to "charge [her] Credit Line to pay other fees and costs that [she is] obligated to pay under this Agreement [or] the Mortgage." *Id.* at 24. Additionally, the promissory note obligates Ms. McCafferty to "obtain insurance on the Property securing this Agreement." *Id.* at 25. It gives BANA the right to terminate or accelerate the credit line account if her actions adversely affect the collateral for the loan, i.e., the property named in the mortgage. *See id.* at 27. And it affirms that "[t]he Mortgage or Deed of Trust [and all related documents] have been properly perfected and are fully enforceable in [*illegible*] accordance with the terms thereof." *Id.* at 30. The mortgage, in turn, repeatedly references the promissory note. *See, e.g., id.* at 34, 35, 39, 43, 45, 49, 50.

It is clear from our analysis of Oklahoma's case law and statutes, together with the agreements under consideration here, that the same six-year statute of limitations necessarily covers an action based on either a promissory note or the mortgage securing it. We are not persuaded by the McCaffertys' arguments to the contrary.

14

The McCaffertys first insist that different statutes of limitation apply to claims predicated on promissory notes (six years) and claims predicated on mortgages, including foreclosure actions (five years).[7]  Like the district court, we find no support for this notion.  Oklahoma courts and statutes treat these two instruments as interconnected, and the limitations periods necessarily track each other.  Further, because the agreements under scrutiny are replete with references to each other, it would make no sense to treat them differently for enforcement purposes.

The McCaffertys next attempt to avert foreclosure by disassociating Ms. McCafferty's promissory note from their joint mortgage—emphasizing that they are separate instruments and do not share the same signatories.  But the debtors in *Wallis* proceeded in the same fashion, with one homeowner executing the promissory note and both homeowners executing the mortgage, 280 P.3d at 975, and the court still applied a six-year statute of limitations to the foreclosure action, *see id.* at 976-77 & n.8.  Not only does the McCaffertys' argument exalt form over substance, but adopting it could promote gamesmanship among mortgagors and borrowers.

Finally, the McCaffertys argue that § 3-118 cannot apply to a foreclosure action because it is modeled after Article 3 of the Uniform Commercial Code ("UCC"), which excludes real estate transactions (and thereby mortgages) from its coverage.  Additionally, Article 3 applies only to negotiable instruments and

---

[7] The McCaffertys moved to amend their complaint on this ground, but the district court denied their motion.  They asked the district court to allow them to divide their second declaratory judgment claim into two claims:  one as to the enforceability of the note and one as to the enforceability of the mortgage.

§ 3-118(a) addresses only actions to enforce notes, yet a mortgage is neither a negotiable instrument nor a note. They cite cases from New Jersey, Massachusetts, Michigan, and Texas to support their position, but those cases are not binding. The parties have not cited, and the court has not found, any Oklahoma case law to this effect.

**B. Even assuming the statute of limitations began to run when BANA accelerated the debt, the 2017 action was timely in light of Oklahoma's savings clause.**

We now apply the six-year statute of limitations to the scenario at hand. The district court found that the statute of limitations began to run when BANA filed the 2011 action because BANA elected to accelerate the due date for the entire balance owed under the note, but the 2017 action was timely filed by virtue of Oklahoma's savings clause, Okla. Stat. tit. 12, § 100. The savings clause affords a party the opportunity to refile its action one time after it has failed "otherwise than upon the merits" and after the statute of limitations has run. *Id.*

In its July 2018 order, the district court applied the relevant factors and correctly concluded that the 2017 action is timely under § 100 because it is Wilmington's first refiling after the dismissal of the 2016 action and after the statute of limitations ran, assuming it was triggered in 2011. *See* Aplt. App. at 152-54. Moreover, the McCaffertys did not challenge the savings-clause ruling in their appellate briefs and thus did not provide any basis to overturn it. *See* Fed. R. App. P. 28(a)(6) (requiring an appellant to "identify[] the rulings presented for review" in the opening brief); *see also Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007)

16

("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."). We therefore affirm the grant of summary judgment to Wilmington on the declaratory judgment claim based on the statute of limitations.

### III. Validity of the Mortgage Agreement

To support their declaratory judgment claim, the McCaffertys also argue that the mortgage is invalid and unenforceable because of an error in the legal description of the property in the mortgage agreement. Even though the mortgage references 1616 South Owasso Avenue in its entirety, they contend that address is technically broken up into four lots (Lots 5, 6, 7, and 8), but only one lot (Lot 5) is referenced in the property description in Schedule A to the mortgage. Lot 5, they argue, is part of a larger parcel of land that cannot be severed or sold separately under applicable zoning laws. They cite general contract law for the notion that reformation is available only when the mistake is mutual, summarily portraying the error in designating the Lots as a unilateral mistake on BANA's part.

The district court dismissed this claim under Rule 12(b)(6), so we apply a different standard of review here. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Plaintiffs must allege specific facts that would support the conclusion that they are entitled to relief. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir.

17

2012) ("[M]ere labels and conclusions . . . will not suffice." (internal quotation marks omitted)).

We affirm the dismissal of this claim for substantially the same reasons articulated by the district court. An inaccurate description of this type can be reformed and does not necessarily invalidate a mortgage under Oklahoma law. How to proceed is a matter for the state court, which can consider parol evidence to identify the real property at issue. This principle has been established for close to a century. The Oklahoma Supreme Court declared in *Varner-Collins Hardware Co. v. New Milford Security Co.*, 153 P. 667 (Okla. 1915), that "mere indefiniteness in the description of land in a mortgage, or an error of description, although it may be such as to render the instrument prima facie inoperative, does not necessarily invalidate it." *Id.* at 669. Rather, a court may "impart certainty to the description" by considering "evidence of extrinsic facts relative to the situation of the parties and the circumstances attending the transaction." *Id.*; *see also Stillwater Nat'l Bank & Tr. Co. v. Woolley*, 823 P.2d 374, 376-77 (Okla. Civ. App. 1991) (discussing a court's equitable power to "correct[] a written instrument to reflect that which the signatories had actually agreed to" and explaining that "even where a mortgage misdescribes the property intended to be mortgaged, the mistake is a matter to be corrected by a proper proceeding *before* judicial foreclosure"). In *Clement Mortgage Co. v. Lewis*, 253 P. 88 (Okla. 1926), the court even applied that rule to a similar scenario, in which the parties misidentified the lot numbers on the mortgage document. It looked at the entire record, concluded that the parties intended to cover lots that were not listed in

18

the mortgage, and directed the parties to reform the mortgage accordingly. *Id.* at 89-90.

In keeping with these principles, Wilmington has appropriately asked the state court in the 2017 action to correct the property description to reflect the parties' intent. Under these circumstances, we cannot say the mortgage is invalid or unenforceable.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

Entered for the Court

Mary Beck Briscoe
Circuit Judge